Joe B. Brown, U.S. Atty., Nashville, Tenn., James C. Thomason, III, Richard Farber, argued, U.S. Dept. of Justice, Tax Div., Civil Trial Section, Southern Region, Washington, D.C.; Glenn L. Archer, Jr., Asst. Atty. Gen., and Michael L. Paup, Appellate Section, for defendant-appellant.

Hugh C. Howser, argued, Trabue, Sturdivant & DeWitt, Nashville, Tenn., for plaintiffs-appellees.

**Charles J. RESHA (84–5012), Jack Dickens (84–5015), Homer Lee Scott (84–5016), Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**Nos. 84–5012, 84–5015 and 84–5016.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 18, 1985.

Decided July 11, 1985.

Before LIVELY, Chief Judge, KRUPANSKY, Circuit Judge, and PECK, Senior Circuit Judge.

LIVELY, Chief Judge.

The government appeals from summary judgment in favor of the plaintiffs in this suit for a refund of wagering excise taxes, penalties and interest which the plaintiffs contended were erroneously and illegally assessed. The issue is whether evidence derived from a lawful wiretap during an investigation of criminal activities and later disclosed to revenue agents who use it for the purpose of making civil tax assessments is subject to suppression in an action to recover taxes paid pursuant to such assessments. The district court suppressed the evidence and, since the assessments against the plaintiffs were based entirely on evidence derived from the wiretap, granted summary judgment.

## I.

In the course of investigating alleged illegal gambling operations, agents of the Federal Bureau of Investigation (FBI) obtained wiretap orders pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (1982) (the Act or the Wiretap Act). On the basis of information intercepted pursuant to the wiretap order, the government then sought and obtained a search warrant for the plaintiffs' premises. During the search FBI agents seized various documents related to gambling activities. Though the plaintiffs were never indicted or tried for any offense designated in the wiretap order or the search warrants, there was considerable newspaper publicity surrounding the search. The FBI agents gave photocopies of some of the seized documents to agents of the Excise Tax Division of the Internal Revenue Service (IRS) and on the basis of the information contained in these copies the IRS computed additional assessments of excise wagering taxes. The plaintiffs objected to the assessments on the ground that the disclosure of the seized materials by the FBI agents to revenue agents of the IRS was not authorized by the Wiretap Act. The plaintiffs filed suit in the United States District Court seeking to prevent dissemination of the seized evidence. The district court dismissed that suit, and this court affirmed in *Dickens v. United States,* 671 F.2d 969 (6th Cir.1982), on the ground that the claim was actually an attempt to enjoin the collection of a tax in violation of the Anti-Injunction Act, 28 U.S.C. § 2201 (1982).

The plaintiffs paid a portion of the wagering tax assessment, filed claims for refund which were denied, and then filed the present action. They contended that the assessment was unlawfully based upon evidence which was originally deprived from the wiretap, that the FBI disclosed the wiretap evidence to the IRS in violation of 18 U.S.C. § 2517, and that the evidence was subject to suppression under 18 U.S.C. § 2515.

On motion for summary judgment the district court held that the FBI agents violated § 2517 when they shared the documents with the IRS revenue agents. Section 2517 provides in pertinent part:

§ 2517. Authorization for disclosure and use of intercepted wire or oral communications

(1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

(2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

The district court concluded that since the disclosure was unauthorized, the evidence was subject to suppression pursuant to section 2515:

§ 2515. Prohibition of use as evidence of intercepted wire or oral communications

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing,

or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter. Summary judgment followed since the government conceded that without the suppressed evidence it could not establish additional wagering tax liability.

In support of its decision the district court reasoned that the unauthorized disclosure extended the use of material derived from the surveillance beyond any necessary limit. The district court wrote, "Violation of section 2517 may not affect the judicial authorization of the original surveillance, but it is in essence a nonjudicially authorized additional intrusion.... Unauthorized disclosure is tantamount to unauthorized search and seizure. No difference exists between limiting the use of surveillance and limiting the use of the fruits of surveillance."

## II.

On appeal the government argues that the disclosure by the FBI agents to the IRS revenue agents was proper under 18 U.S.C. § 2517(2) since this "use" of knowledge obtained pursuant to an authorized wiretap was "appropriate to the proper performance of [their] official duties." That is to say, since FBI agents are charged with investigating violations of all federal laws, § 2517(2) permits an FBI agent who has obtained information concerning the violation of tax laws while investigating other criminal activities to advise agents of the IRS of his findings. The plaintiffs respond that the federal wiretap statute does not authorize the use of wiretaps to investigate civil tax liability and thus it was no part of the duty of the FBI agents investigating alleged criminal activities to permit revenue agents of the IRS to have information obtained from the wiretap for use in computing civil tax assessments.

This issue was raised in *Fleming v. United States*, 547 F.2d 872 (5th Cir.) (per

curiam), *cert. denied*, 434 U.S. 831, 98 S.Ct. 113, 54 L.Ed.2d 90 (1977). In its decision the court found that the wiretap statute is ambiguous on the question of disclosure and that the statute does not make clear the interaction between sections 2517 and 2515. However, the court in *Fleming* did not attempt to solve the ambiguity because it concluded that under the particular circumstances of that case the district court had correctly denied suppression. In *Fleming*, following an authorized wiretap, the defendant pled guilty to a charge of illegal gambling and the contents of the interception were introduced as evidence in the criminal proceedings. In a subsequent action for a refund of the additional assessment of wagering taxes which grew out of the wiretap, the taxpayer made the same argument that the plaintiffs make in this case. The court of appeals noted that there was reason to believe that the IRS revenue agents were covered by section 2517(2) and that it was a proper use of such evidence for the FBI agents to turn it over to the revenue agents. However, the actual holding in *Fleming* is narrow and appears to be based on the fact that the evidence obtained by the wiretap had been disclosed previously in the criminal proceedings. The court in *Spatafore v. United States*, 752 F.2d 415 (9th Cir.1985), followed *Fleming*. In *Spatafore* there had been an indictment and proceedings in which the intercepted communications were made part of the public record in a criminal prosecution. Since the plaintiffs in this case were never indicted and the evidence was never introduced in criminal proceedings, neither the court in *Fleming* nor in *Spatafore* decided the central issue here.

## III.

As did the Fifth Circuit, we find the language of the section unclear as to when a disclosure is permitted "use" within § 2517(2). However, we do not believe it is necessary in the present case to determine whether disclosure of the evidence to the revenue agents violated § 2517 since we conclude that the Act does not authorize

suppression of the evidence in this action, regardless of whether the disclosure violated § 2517. We construe § 2515 to permit suppression of evidence only if that evidence was derived from unlawful, improper or unauthorized *interceptions* of wire or oral communications. It does not authorize suppression for *disclosures* of such information, even if they violate § 2517. This determination is based upon the legislative history of the Act and court decisions that require § 2515 to be read "in light of" 18 U.S.C. § 2518(10)(a), which provides in part:

(10)(a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

In discussing § 2515 Congress explicitly stated, "[t]he provision [§ 2515] must, of course, be read in light of section 2518(10)(a) discussed below, which defines the class entitled to make a motion to suppress." S.Rep. No. 1097, 90th Cong., 2d Sess. 96, *reprinted in* [1968] U.S.Code Cong. & Ad.News 2112, 2185. In the later discussion of § 2518(10)(a), the report declared:

This provision must be read in connection with sections 2515 and 2517, discussed above, which it limits. It provides the remedy for the right created by section 2515. * * * The motion [to suppress] may be made on the ground that: (i) the communication was unlawfully intercepted, (ii) the order of authorization or approval is insufficient on its face, or (iii)

the interception was not made in conformity with the order.

S.Rep. No. 1097, *supra*, at 2195. In the present case the plaintiffs did not move to suppress on any of these grounds. The only basis of their motion was the allegedly unlawful disclosure of information by the FBI to the IRS.

The Supreme Court has consistently limited suppression under § 2515 to the grounds contained in § 2518(10)(a). In *United States v. Giordano*, 416 U.S. 505, 524–25, 94 S.Ct. 1820, 1831, 40 L.Ed.2d 341 (1974), the Court stated:

Section 2515 provides that no part of the contents of any wire or oral communication, and no evidence derived therefrom, may be received at certain proceedings, including trials, "if the disclosure of that information would be in violation of this chapter." What disclosures are forbidden, and are subject to motions to suppress, is in turn governed by § 2518(10)(a), which provides for suppression of evidence on the following grounds:

"(i) the communication was unlawfully intercepted;

"(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

"(iii) the interception was not made in conformity with the order of authorization or approval."

(Footnote omitted). In *United States v. Chavez*, 416 U.S. 562, 571, 94 S.Ct. 1849, 1854, 40 L.Ed.2d 380 (1974), a companion case to *Giordano*, the Court again identified the grounds for suppression under § 2515 as those contained in § 2518(10)(a). In *United States v. Donovan*, 429 U.S. 413, 432, 97 S.Ct. 658, 670, 50 L.Ed.2d 652 (1977), the Court wrote:

Section 2515 expressly prohibits the use at trial, and at certain other proceedings, of the contents of any intercepted wire communication or any evidence derived therefrom "if the disclosure of that information would be in violation of this chapter." The circumstances that trigger

suppression under § 2515 are in turn enumerated in § 2518(10)(a):

"(i) the communication was unlawfully intercepted;

"(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

"(iii) the interception was not made in conformity with the order of authorization or approval."

In *Donovan* the Supreme Court reversed this court's decision in *United States v. Donovan,* 513 F.2d 337 (6th Cir.1975). In upholding a district court suppression order, this court found that the government's failure to identify suspects whose communications had been intercepted and to serve inventory notices upon them rendered these communications "unlawfully intercepted" within § 2518(10)(a), requiring suppression. *Id.* at 343–44. Judge Engel dissented, arguing that the majority's construction ran "counter to standards for suppression set forth in *Giordano* and *Chavez.*" *Id.* at 345. Judge Engel noted that post-intercept requirements of the Act, such as service of inventory notices, have "little, if anything[,] to do with detering improper initial resort to the [wiretap] procedure," and that this particular provision did not play a "central role" in "limiting the use of intercept procedures." *Id.*

The Third Circuit dealt directly with the availability of suppression for the unlawful disclosure of otherwise legally intercepted communications in *United States v. Vento,* 533 F.2d 838, 855 (3d Cir.1976), stating:

A motion to suppress does not appear to lie when the complaint is one of improper disclosure, rather than one of unlawful interception.

(Footnote omitted). See also *United States v. Iannelli,* 477 F.2d 999, 1001 (3d Cir. 1973), *aff'd on other grounds,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975) ("In any event the suppression remedy specified in 18 U.S.C. § 2518(10)(a) applies to unlawful interceptions. A civil remedy applies to unlawful disclosures. 18 U.S.C. § 2520.").

## IV.

The district court held that an unauthorized disclosure is "in essence a non-judicially authorized additional intrusion." The court reached a similar conclusion in *United States v. Dorfman,* 690 F.2d 1217, 1228 (7th Cir.1982), holding that under the Wiretap Act, "unlike the Fourth Amendment, the invasion of privacy is not simply 'over and done with' when an unlawful intrusion has been effected. Rather, the disclosure or use of information obtained through such an intrusion amounts to a separate injury to the victim's privacy interest." (Citation omitted). However, the finding that there has been a separate post-interception intrusion does not require suppression when the interception itself was lawful. This is the meaning of the Act as expressed in the legislative history and as construed by the courts.

Absent the statement of congressional purpose in S.Rep. No. 1097 and the Supreme Court holdings referred to earlier, it would be a justifiable conclusion that suppression is the proper remedy for an unlawful disclosure of lawfully intercepted communications and of evidence derived from lawful interceptions. Section 2515 prohibits the use of such communications and evidence derived therefrom in all proceedings "if the disclosure of that evidence would be in violation of [the Wiretap Act]," and § 2517 limits the disclosures which may lawfully be made. Nevertheless, the legislative history and authoritative construction of the statute lead to the conclusion that the extreme remedy of suppression is authorized only when the interception itself was unlawful for one or more of the reasons set forth in § 2518(10)(a). The Act does create a civil action for damages, however. 18 U.S.C. § 2520.

The judgment of the district court is reversed, and the cause is remanded for further proceedings consistent with this opinion.