STATE of Wisconsin, Plaintiff-Appellant,

v.

Kevin GILMORE, Defendant-Respondent-Petitioner.

Supreme Court

*No. 94–0123–CR. Oral argument April 29, 1996.—Decided June 12, 1996.*

(Also reported in 549 N.W.2d 401.)

For the defendant-respondent-petitioner there were briefs by *Robert R. Henak* and *Shellow, Shellow & Glynn, S.C.*, Milwaukee and oral argument by *Robert R. Henak.*

For the plaintiff-appellant the cause was argued by *Donald V. Latorraca*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *State v. Gilmore*, 193 Wis. 2d 403, 535 N.W.2d 21 (Ct. App. 1995), reversing an order of the circuit court for Milwaukee County, John A. Franke, Judge. A criminal complaint had been filed against Kevin Gilmore (the defendant) and others charging them with conspiracy to deliver cocaine. The circuit court granted the defendant's motion to strike references in the criminal complaint to communications intercepted by wiretap and then dismissed the redacted complaint for failure to state probable cause. The court of appeals reversed, holding that Wis. Stat. § 968.29 (1993-94)[1] does not preclude a prosecutor from including electronically intercepted communications in a criminal complaint and more specifically that Wis. Stat. § 968.29(2) grants a prosecutor the authority to use the contents of inter-

---

[1] All further references are to the 1993-94 edition of the Wisconsin statutes.

cepted communications in a criminal complaint. We affirm the decision of the court of appeals reinstating the criminal complaint and remanding it without redactions to the circuit court, but our rationale for this result differs from that of the court of appeals.

The chief issue presented for our review is one of statutory interpretation. We must determine whether the inclusion of intercepted communications in a criminal complaint constitutes an unauthorized disclosure under the Wisconsin Electronic Surveillance Control Law (WESCL), Wis. Stat. §§ 968.27-968.37.

We hold that while WESCL does not authorize the State's unilateral public disclosure of intercepted communications in a criminal complaint, the State may incorporate intercepted communications in a complaint if the State files the complaint under seal with the circuit court. The State did not file the complaint in this case under seal, and accordingly we conclude that it has violated WESCL.

Because we so hold, we must also address the question of the appropriate sanction for such a violation. The defendant contends that the illegally intercepted communications should be stricken from the State's complaint. We conclude, however, that under the circumstances of this case WESCL does not authorize suppression of the contents of a legally intercepted communication. The statute reserves the remedy of suppression for illegally intercepted communications. At this stage of the proceedings no argument has been made that the State's interception of the communications at issue was illegal. We therefore remand the cause to the circuit court with instructions to reinstate the original complaint under seal and for further proceedings consistent with this opinion.

## I.

For purposes of this review, the facts are not in dispute. Pursuant to a court-authorized wiretap, the Milwaukee police intercepted communications in the summer of 1991 allegedly connecting the defendant to drug transactions. At this stage of the proceedings the defendant does not contend that the interception was illegal. Indeed the parties agree that for the purposes of this review the interception is to be treated as lawful.

A criminal complaint charging the defendant and several others with conspiracy to deliver cocaine was filed on September 29, 1992. The complaint contained numerous references to the intercepted communications, including 27 pages of verbatim transcripts of those communications.

The defendant moved to strike the contents of the intercepted communications from the complaint and to dismiss the redacted complaint for failing to state probable cause. The circuit court concluded that the State's inclusion of the intercepted communications in its criminal complaint was not authorized under Wis. Stat. § 968.29, which establishes the conditions under which intercepted communications may be disclosed and used. Having redacted the intercepted communications from the State's complaint, the circuit court then concluded that the complaint failed to state probable cause and dismissed the complaint.

The court of appeals reversed, concluding that "under the unambiguous language of Wis. Stat. § 968.29(2), a prosecutor is permitted to include intercepted communications in a criminal complaint." *Gilmore* , 193 Wis. 2d at 407. The court of appeals reinstated the State's original complaint. *Id.* at 411. The defendant then sought review by this court.

## II.

We turn first to the question of whether WESCL permits the State to disclose the contents of lawfully intercepted communications in a criminal complaint. Statutory interpretation is an issue of law which we review *de novo*, benefitting from the analyses of the circuit court and the court of appeals. *Wisconsin Patients' Comp. Fund v. Wisconsin Health Care Liab. Ins. Plan*, 200 Wis. 2d 599, 606, 547 N.W.2d 578 (1996); *Waste Mgmt. v. Kenosha County Rev. Bd.*, 184 Wis. 2d 541, 554, 516 N.W.2d 695 (1994).

WESCL was patterned after Title III of the Omnibus Crime Control and Safe Streets Act of 1968, and thus our interpretation of WESCL benefits from the legislative history of Title III as well as from federal decisions that have considered Title III. *Arnold v. County Court of Rock County*, 51 Wis. 2d 434, 443, 187 N.W.2d 354 (1971).[2] Title III provides the minimum standard against which an interception must be judged. Both the State and the defendant have treated the state and federal standards as though they were identical. *See* 18 U.S.C. § 2515; *United States v. Marion*, 535 F.2d 697, 701 (2d Cir. 1976).

Wisconsin Stat. § 968.29 states the conditions under which disclosure is authorized.[3] Wisconsin Stat.

---

[2] Neither this court nor the Wisconsin court of appeals has had occasion prior to this case to address the question before us today or to interpret the meaning of Wis. Stat. § 968.29(2). Two prior decisions of this court have addressed the scope of the testimonial disclosures authorized by Wis. Stat. § 968.29(3). *See State v. Waste Mgmt. of Wisconsin, Inc.*, 81 Wis. 2d 555, 261 N.W.2d 147 (1978); *State ex rel. Arnold v. County Court*, 51 Wis. 2d 434, 187 N.W.2d 354 (1971).

[3] The comparable federal provision is 18 U.S.C. § 2517.

§ 969.29(1) authorizes investigative or law enforcement officers to "disclose the contents" of legally intercepted communications to other investigative or law enforcement officers "only to the extent that the disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure." Wisconsin Stat. § 968.29(1) states:

> Any investigative or law enforcement officer who, by any means authorized by ss. 968.28 to 968.37 or 18 USC 2510 to 2520, has obtained knowledge of the contents of any wire, electronic or oral communication, or evidence derived therefrom, may disclose the contents to another investigative or law enforcement officer only to the extent that the disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

Wisconsin Stat. § 968.29(2) authorizes investigative or law enforcement officers to "use the contents" of legally intercepted communications "only to the extent the use is appropriate to the proper performance of the officer's official duties." Wisconsin Stat. § 968.29(2) states:

> Any investigative or law enforcement officer who, by any means authorized by ss. 968.29 to 968.37 or 18 USC 2510 to 2520, has obtained knowledge of the contents of any wire, electronic or oral communication or evidence derived therefrom may use the contents only to the extent the use is appropriate to the proper performance of the officer's official duties.

Wis. Stat. § 969.29(3)(a) authorizes any person to "disclose the contents" of legally intercepted communications "only while giving testimony under oath or

826

affirmation" in proceedings set forth in the statute. Wisconsin Stat. § 968.29(3)(a) states:

> Any person who has received, by any means authorized by ss. 968.29 to 968.37 or 18 USC 2510 to 2520 or by a like statute of any other state, any information concerning a wire, electronic or oral communication or evidence derived therefrom intercepted in accordance with ss. 968.28 to 968.37, may disclose the contents of that communication or that derivative evidence only while giving testimony under oath or affirmation in any proceeding in any court or before any magistrate or grand jury in this state, or in any court of the United States or of any state, or in any federal or state grand jury proceeding.

The State contends that the plain language of Wis. Stat. § 968.29(2) authorizes the inclusion of legally intercepted communications in the criminal complaint filed in this case. Under Wisconsin law, reasons the State, a prosecutor has a duty to file a criminal complaint detailing "the essential facts constituting the offense charged." Wis. Stat. §§ 968.01(2) and 968.02(1). The State argues that the use of legally intercepted communications in a complaint is therefore authorized under Wis. Stat. § 968.29(2) because it falls within the ambit of those uses "appropriate to the proper performance" of a prosecutor's duties.

The defendant, on the other hand, urges this court to interpret § 968.29 as did the circuit court and hold that the State's unilateral public disclosure of intercepted communications in the complaint was not authorized. He argues, following the reasoning of the circuit court, that the State's reading of Wis. Stat. § 968.29(2) is erroneous because it contravenes the language of Wis. Stat. § 968.29 by rendering Wis. Stat.

§ 968.29(1) superfluous. If, as the State suggests, the meaning of "use" in Wis. Stat. § 968.29(2) is broad enough to include disclosures made in the course of filing a legal document such as a criminal complaint, the defendant argues that it is also broad enough to include those disclosures to other officers authorized under Wis. Stat. § 968.29(1). And if, the defendant continues, disclosures of legally intercepted communications authorized under Wis. Stat. § 969.29(1) are a mere subset of those uses of such information authorized under Wis. Stat. § 968.29(2), then Wis. Stat. § 968.29(1) is unnecessary and is surplusage. The defendant insists, as did the circuit court, that a plausible reading of Wis. Stat. § 968.29(2) must ascribe a meaning to Wis. Stat. § 968.29(1) distinct from the meaning of Wis. Stat. § 968.29(2). The defendant claims that the circuit court was correct when it determined that Wis. Stat. § 968.29(2) refers only to uses which investigative or law enforcement officers might make of legally intercepted communications without disclosing them. Such uses, suggests the defendant, could include establishing probable cause to search or arrest, assisting witnesses by refreshing their recollections with the contents of their own telephone conversations and pursuing other investigative leads.

Although the subsections of Wis. Stat. § 968.29 overlap and are not a model of clarity, we agree with the circuit court. Its interpretation gives meaning to each subsection of Wis. Stat. § 968.29 and comports with the legislative purpose.

The State's interpretation that "use" includes "disclosure" contravenes the language of Wis. Stat. § 968.29 and the entire WESCL, which repeatedly makes distinctions between uses and disclosures of

intercepted communications.[4] Were we to consider disclosures as no more than a subset of those uses of such communications authorized under Wis. Stat. § 968.29(2), the repeated statutory distinction between use and disclosure would be unnecessary; there would be no need to provide separately for those disclosures authorized by Wis. Stat. § 968.29(1). Why would the legislature need to authorize a particular type of disclosure in Wis. Stat. § 968.29(1) if it already authorized such disclosures in Wis. Stat. § 968.29(2)?[5] As we have previously stated, "construction of a statute that would result in any portion of the statute being superfluous

---

[4] *See, e.g.*, Wis. Stat. § 968.29(5) ("may be disclosed or used"); Wis. Stat. § 968.30(7)(a) ("may be made for use or disclosure"; "shall be a prerequisite for the use or disclosure of the contents of any . . . communication"). *Compare* Wis. Stat. § 968.31(1)(d) and Wis. Stat. § 968.31(1)(e) (distinguishing between use and disclosure).

[5] *See also Scott. v. United States*, 573 F. Supp. 622 (M.D. Tenn. 1983), *rev'd on other grounds sub nom. Resha v. United States*, 767 F.2d 285 (6th Cir. 1985), *cert. denied*, 475 U.S. 1081 (1986). Interpreting 18 U.S.C. §§ 2517(1) and (2), which are substantially similar to Wis. Stat. § 968.29(1) and (2), respectively, the *Scott* court commented that if "disclosure were intended to be within the performance of the officer's duties in section 2517(2), then section 2517(1) would be totally unnecessary." *Scott*, 573 F. Supp. at 625. "Why," the *Scott* court queried, "would Congress limit disclosure in section 2517(1) only to throw it wide open in section 2517(2)?" *Id.* "The only logical conclusion," the *Scott* court continued, "is that disclosure is not included in the definition of 'use' as it is intended in 2517(2). 'Use' in section 2517(2) means use in the officer's own departmental investigation and prosecution." *Id. Scott* represents the only decision cited to us by either party which directly addresses the relation between §§ 2517(1) and (2) or their respective state analogues.

should be avoided wherever possible."*Ann M.M. v. Rob S.*, 176 Wis. 2d 673, 680, 500 N.W.2d 649 (1993).

Furthermore, reading Wis. Stat. § 968.29(2) as not authorizing the State's unilateral disclosure in a criminal complaint is in harmony with the statute's purpose to protect privacy. This legislative purpose is evidenced in the legislative history of Title III and federal decisions interpreting Title III.

In enacting Title III Congress displayed an overriding concern with protecting privacy. Decrying the extent to which scientific and technological developments "seriously jeopardized" "privacy of communication" and noting that "[n]ew protections for privacy must be enacted" because of the "totally unsatisfactory" state of then current law, the Senate Report accompanying Title III underscored that "protecting the privacy of wire and oral communications" was a chief congressional concern in enacting the law. S. Rep. No. 1097, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2153-2156.

Federal decisions interpreting Title III have repeatedly emphasized Congress' concern with protecting privacy interests. Noting that the passage of Title III followed a long battle between those who would have prohibited the use of wiretaps altogether and those who wanted to allow the government to use wiretap material in criminal prosecutions, the federal court of appeals for the Second Circuit stressed the importance of protecting the "significant privacy interests of those who have been targeted for surveillance." *United States v. Gerena*, 869 F.2d 82, 86 (2d Cir. 1989). "The legislative history of the statute," observed the federal court of appeals for the Third Circuit, "emphasizes the concern of its drafters that the Act preserve as much as

could be preserved of the privacy of communications, consistent with the legitimate law enforcement needs that the statute also sought to effectuate." *United States v. Cianfrani*, 573 F.2d 835, 856 (3d Cir. 1978).[6]

The federal court of appeals for the Seventh Circuit has explained how the Title III analogue of Wis. Stat. § 968.29 established this balance between the requirements of law enforcement and the importance of individual privacy. By "permitting disclosure of lawfully obtained wiretap evidence only under the specific circumstances listed in 18 U.S.C. s2517," wrote Judge Posner, "Title III implies that what is not permitted is forbidden." *United States v. Dorfman*, 690 F.2d 1230, 1232 (7th Cir. 1982). Further, Judge Posner continued, while Congress had authorized "public disclosure of lawfully obtained wiretap evidence through public testimony in legal proceedings" under § 2517(3), it had not authorized "wiretap evidence not made public in this manner to be made public another way without the consent of the people whose phone conversations were intercepted." *Dorfman*, 690 F.2d at 1234.

The State points out, however, that both federal and state cases have upheld the use of wiretap evi-

---

[6] *See also Gelbard v. United States*, 408 U.S. 41, 47-50 (1972) (discussing the legislative history of Title III and noting Congress' purpose to protect privacy); *Certain Interested Individuals v. The Pulitzer Prize Co.*, 895 F.2d 460, 464 (8th Cir.), *cert. denied*, 498 U.S. 880 (1990) (citations omitted) (concluding that in "construing the statute, it should always be remembered that although Title III authorizes invasions of individual privacy under individual circumstances, the protection of privacy was an overriding congressional concern"); Clifford S. Fishman & Anne T. McKenna, *Wiretapping and Eavesdropping* (2d ed. 1995) § 1.6 at 1-10, 1-14 (stating that Congress intended Title III to "maximize the protection of privacy").

dence in court documents such as affidavits filed in support of search warrants and applications for stays.[7] Such uses are also sanctioned by the Senate Report accompanying Title III, which states that 18 U.S.C. § 2517(2), the federal equivalent of Wis. Stat. § 968.29(2), envisions "use" of intercepted communications to establish probable cause for arrest, to establish probable cause to search, or to develop witnesses. S. Rep. No. 1097, *supra* at 2188.

But these "uses" contemplated by the Senate Report do not require public disclosures and, as the defendant explains in his brief, the State has failed to cite a single case authorizing unilateral disclosure to the public at large of the contents of intercepted communications.[8]

---

[7] *See, e.g., Application of Newsday, Inc.*, 895 F.2d 74 (2d Cir.), *cert. denied*, 496 U.S. 931 (1990) (allowing disclosure in search warrant affidavit; affidavit had been sealed; redacted copy released); *United States v. Johnson*, 696 F.2d 115, 118 n.21 (D.C. Cir. 1982) (approving disclosure of intercepted wire communications to magistrate in affidavit for search warrant); *Birdseye v. Driscoll*, 534 A.2d 548 (Pa. Commw. Ct. 1987) (allowing disclosure of already revealed wiretap information in application for a stay pending appeal).

[8] *But see United States v. Woods*, 544 F.2d 242, 253 (6th Cir. 1976), *cert. denied*, 430 U.S. 969 (1977) in which the court of appeals refused to dismiss charges against the defendant when the government released a search warrant affidavit including information from wire interceptions. In its only discussion of sealing documents the court stated that "it would be better practice for the government to request, as a matter of course, that the district court restrict access to documents filed with the court that contain intercepted communications."

The State correctly points out that the *Dorfman* court did not decide whether the district judge was required to seal the exhibits at issue under either Title III or the due process clause

When intercepted materials are used in a criminal complaint, public disclosure can be avoided by submitting the documents to the courts under seal. One might construe a submission of intercepted materials to a court under seal as a "disclosure" of those materials.[9] But as the defendant points out, the more common meaning of disclosure involves making known or public that which has previously been held close or secret. Brief for Defendant at 14 n.6.

Documents are presented under seal precisely so that their secrecy might be preserved and disclosure to the public might be prevented. As the *Dorfman* court stated in distinguishing between divulging information to a court and to the general public:

> [W]e are not persuaded that since the law enforcement officers who recorded the wiretaps, and the district judge, who read the transcripts, know the content of the wiretaps, the appellants' privacy interest has been hopelessly compromised and public exposure can do no further harm. This overlooks the distinction between disclosure to a profession-

of the Fifth Amendment guaranteeing criminal defendants a fair trial.

In *United States v. Gerena*, 869 F.2d 82, 86 (2d Cir. 1989), however, the federal court of appeals for the second circuit concluded that when the government wants to use unsuppressed Title III materials in a publicly filed memorandum or brief, the government must give the defendant notice and an opportunity to object.

[9] While Wis. Stat. § 968.29(1) explicitly authorizes the disclosure of intercepted communications to other investigative or law enforcement officers, judges are neither investigative nor law enforcement officers for purposes of WESCL. *Compare* Wis. Stat. § 968.27(10) (defining investigative and law enforcement officers) with Wis. Stat. § 968.27(11) (defining judges).

ally interested stranger and to the world at large . . . Title III does not allow public disclosure of all lawfully obtained wiretap evidence just because a few officers are privy to its contents; if it were construed to do so, much of the statute would be superfluous . . . .

*Dorfman*, 690 F.2d at 1234-35.[10]

Finally, both WESCL and Title III make provision for a person who has been the subject of a wiretap to move for the suppression of wiretap evidence on the ground that the communications at issue were illegally intercepted.[11] The statutory provision would be undermined if wiretap evidence could be publicly disclosed before a court had ruled on whether it was lawfully

---

[10] *See also Forsyth v. Barr*, 19 F.3d 1527, 1542 (5th Cir.) *cert. denied sub nom. Forsyth v. Vines*, 115 S. Ct. 195 (1994) (distinguishing limited nonpublic use and exchange of intercepted wire communications among law enforcement officers from "unnecessarily widespread dissemination of the contents of interceptions"); *Certain Interested Individuals*, 895 F.2d at 465 (noting that the disclosure of wiretap information to law enforcement officers in a search warrant application "cannot transform the wiretap information into non-wiretap information unprotected by Title III" because "[a]cceptance of this argument would create a very large loophole in Title III"; prohibiting disclosure of even redacted version of search warrant affidavit); *United States v. Cianfrani*, 573 F.2d 835, 855 (3d Cir. 1978) (distinguishing the "carefully limited" nonpublic disclosure of intercepted communications from the public disclosures "authorized only in accordance with [testimony given under] s 2517(3)"); *United States v. Shenberg*, 791 F. Supp. 292, 293 (S.D. Fla. 1991) (limiting disclosure of intercepted communications to " 'professionally interested strangers' in the context of their official duties" (quoting *Certain Interested Individuals*, 895 F.2d at 465)).

[11] *See infra* note 18.

intercepted. *Dorfman*, 690 F.2d at 1233; *Cianfrani*, 572 F.2d at 857.

In sum, the language and purpose of WESCL lead to the conclusion that while the State may use legally intercepted wire communications in conjunction with a criminal complaint, it cannot make unilateral public disclosure of these communications. If the state wishes to incorporate such a communication in a criminal complaint, it must avoid public disclosure by submitting the complaint to the circuit court under seal.[12] This interpretation conforms to the language of the statute

---

[12] We do not intend to suggest that legally intercepted wire communications can never be disclosed to the public. The United States Supreme Court has stated that privacy rights are not absolute but must rather be balanced against both a common-law right of public access and a First Amendment right of access. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-98 (1978) (common-law right of access); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) (*Press-Enterprise II*) (First Amendment right of access).

As the federal court of appeals for the Second Circuit has stated, "the argument that [Title III] always forbids public disclosure of unsuppressed, intercepted communications . . . cannot withstand scrutiny . . . .'[W]here a qualified First Amendment right of access exists, it is not enough simply to cite Title III. Obviously a statute cannot override a constitutional right.' " *United States v. Gerena*, 869 F.2d at 85 (quoting *In re New York Times Co.*, 828 F.2d 110, 115 (2d Cir. 1987), *cert. denied sub nom. Esposito v. New York Times*, 485 U.S. 977 (1988)). *See also Certain Interested Individuals*, 895 F.2d at 466 (qualified First Amendment right of access neither requires that Title III materials "must automatically be disclosed" nor that they "must remain permanently sealed" but rather requires a careful judicial "balancing of the public's interest in access against the individual's privacy interests").

and promotes the privacy interests which WESCL seeks to protect without hindering the legitimate law enforcement needs which WESCL is designed to facilitate.[13]

## III.

By failing to file its criminal complaint against the defendant under seal, the State has violated the prohibition in WESCL against the unilateral public disclosure of electronically intercepted communications. The defendant argues that the only appropriate remedy would be to strike from the State's complaint any information gathered from its wiretap. The State contends that WESCL does not authorize such a remedy.[14]

Because we are called upon today to address only what the State might lawfully disclose under WESCL and Title III, we need not reach the question of how the defendant's privacy interest in this case must be balanced against the public's right of access under either the common law or the First Amendment.

[13] According to the State, approximately one wiretap application is submitted in Wisconsin every two years, and approximately ten persons are charged as a consequence of information procured from intercepted communications. At oral argument, counsel for the State admitted that it would not be unduly burdened by a requirement that it submit court documents such as a criminal complaint under seal.

[14] As an initial matter, the defendant contends that the State has waived any objection it might have had to the remedy fashioned by the circuit court. Under the waiver doctrine, an appellate court will ordinarily not address "issues not raised or considered in the trial court." *Wirth v. Ely*, 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980). As the State points out, however, it has always objected to the defendant's initial motion to strike wiretap materials from the State's complaint. *See, e.g.*, the State's Response to the defendant's "Motion to Strike Contents of Inter-

The circuit court, having found that the State's disclosure violated WESCL, concluded that the only appropriate remedy would be to strike the legally intercepted wire communications from the State's complaint. Analogizing to the exclusionary rule, the circuit court reasoned that striking such communications from the complaint insured that the circuit court would not consider information it "never should have read . . . to begin with" in assessing whether the State's complaint stated probable cause. The circuit court expressed concern that were it not to grant the defendant's motion to strike, it would be placed in the position of promoting a violation of the statute.

Expanding upon the circuit court's analogy to the exclusionary rule, the defendant insists that the circuit court's remedy should be upheld so the State cannot "benefit from its own wrongdoing." Brief for Petitioner at 27. The circuit court's remedy, contends the defendant, "simply places the parties in the exact same position they would have been in had the state complied with the law by not disclosing the wiretap information in the first place." *Id.*

The reasoning of both the circuit court and the defendant reflects the assumption that even the filing of a sealed complaint containing intercepted communications would constitute an invalid disclosure to the judge reviewing that complaint. But because we hold today that a sealed criminal complaint does not consti-

cepted Wire Communication from Criminal Complaint and to Dismiss Criminal Complaint." Moreover, as we explain below, the circuit court expressly considered and questioned whether striking any reference to the wiretap materials from the State's complaint represented an appropriate remedy. We therefore reject the defendant's waiver argument.

tute an invalid disclosure under WESCL, the assumption upon which the reasoning of the circuit court and the defendant is predicated is incorrect.

Were we to strike legally intercepted wire communications from the State's complaint, we would place the State not in the same position but in a *worse* position than it would have occupied had it complied with the statute. There are no tangible "fruits" or "benefits," as the defendant argues, accruing to the State as a consequence of its violation in this case. Had it proceeded in accordance with WESCL, the State would have achieved precisely the result it seeks today: the use of legally intercepted wire communications in a complaint against the defendant.[15] Because the State's initial failure to file a complaint under seal neither contributed toward nor impeded its effort to establish probable cause, any subsequent reliance by the circuit court upon legally intercepted communications in assessing whether the State had established probable cause would be unrelated to any benefit the State might have derived from its violation of WESCL.

The defendant suggests that should the State be allowed to use the legally intercepted wire communications at issue in this case in its criminal complaint, he would be left with "no remedy at all" for the State's WESCL violation. WESCL itself, however, suggests otherwise. Wisconsin Stat. § 968.31(2m) grants "[a]ny

---

[15] The defendant relies upon legislative history to Title III stating that "[t]he perpetrator must be denied the fruits of his unlawful actions in civil and criminal proceedings." Brief for Petitioner at 26 (citing S. Rep. No. 1097, *supra* at 2156). We agree with this statement but discern no tangible fruits accruing to the State as a consequence of its violation. Moreover, as we discuss below, neither Title III nor WESCL authorizes the remedy which the defendant seeks.

person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of ss. 968.28 to 968.37" a civil cause of action to recover actual damages, punitive damages, reasonable attorney fees and other litigation costs reasonably incurred. In addition, Wis. Stat. § 968.31(1)(e), which has no federal counterpart,[16] imposes a criminal penalty on anyone who "[i]ntentionally discloses the contents of any oral, electronic or wire communication obtained by authority of ss 968.28, 928.29 and 968.30, except as therein provided."[17]

Furthermore, suppression of wire communications under WESCL is reserved for those communications illegally intercepted. Wis. Stat. § 968.30(9)(a).[18] Fed-

---

[16] WESCL, unlike Title III, provides a criminal penalty for an illegal disclosure of a legally intercepted wire communication. Hence a number of federal cases have held, *see infra* n.18, that civil sanctions represent the only remedy under Title III.

[17] During oral argument, counsel for the defendant alluded to the statute's criminal sanctions, but did not elaborate on whether they were applicable in this case. The circuit court also alluded in passing to the statute's criminal sanctions, stating that they were "clearly inappropriate" but adding that whether or not they should be imposed was not "up to me." Because the applicability of such sanctions in this case has not been briefed, we decline to discuss them further.

[18] Wisconsin Stat. § 968.30(9)(a) provides for suppression under limited circumstances as follows:

Any aggrieved person in any trial, hearing or proceeding in or before any court, department, officer, agency, regulatory body or other authority of this state, or a political subdivision thereof, may move before the trial court or the court granting the original warrant to suppress the contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom, on the grounds that the communication was unlawfully intercepted; the order of authorization or approval under which it was intercepted is insufficient on its face; or the interception was not made in conformity

eral courts interpreting Title III have concluded that for purposes of suppression a distinction must be drawn between remedies available for illegally intercepted and illegally disclosed wire communications.[19]

with the order of authorization or approval. The motion shall be made before the trial, hearing or proceeding unless there was no opportunity to make the motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire, electronic or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of ss. 968.28 to 968.37. The judge may, upon the filing of the motion by the aggrieved person, make available to the aggrieved person or his or her counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interest of justice.

Illegally intercepted communications violate the Fourth Amendment right against "unreasonable searches and seizures." *See Katz v. United States*, 389 U.S. 347 (1967); *Berger v. New York*, 388 U.S. 41 (1967). Lawfully intercepted communications which are illegally disclosed, however, do not. As counsel for the defendant acknowledged during oral argument, no Fourth Amendment concerns are implicated by the statutory violation against public disclosure which is at issue in this case.

[19] *See, e.g., United States v. Saviano*, 843 F.2d 1280, 1289 n.1 (10th Cir.) *cert. denied sub nom. Crummey v. U.S.*, 488 U.S. 836 (1988) (the sanction of suppression under Title III is limited to cases in which the government has illegally intercepted evidence; collecting cases); *United States v. Cardall*, 773 F.2d 1128, 1134 (10th Cir. 1985) (when evidence legally intercepted is disclosed in violation of 18 U.S.C. § 2517, "conditions upon which the sanction of suppression could be invoked are not present" and civil sanctions represent "the only sanction against illegal disclosure of intercepted communications available to the aggrieved party"); *Resha* , 767 F.2d at 289 (when an initial interception is lawful, a subsequent disclosure violating 18 U.S. C. § 2517(2) does not warrant suppression; "the legislative history and authoritative construction of the statute lead to the

The defendant contends that Title III "expressly provides for the remedy the Circuit Court adopted here" in 18 U.S.C. § 2515.[20] The United States Supreme Court, however, has declared that 2515 applies only to disclosures of illegally intercepted materials, holding as follows:

> What disclosures are forbidden, and are subject to motions to suppress, is in turn governed by § 2518(10)(a), which provides for suppression on of the evidence on the following grounds:
>
> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

*United States v. Giordano*, 416 U.S. 505, 524-25 (1974). *See also* S. Rep. No. 1097, *supra* at 2185, 2195 (confirming that 18 U.S.C. § 2515 refers to disclosures of illegally intercepted materials); *United States v. Donovan*, 429 U.S. 413, 432-33 (1977) (not every failure to comply fully with requirements of Title III justifies suppression); *United States v. O'Connell*, 841 F.2d

---

conclusion that the extreme remedy of suppression is authorized only when the interception itself was unlawful").

[20] 18 U.S.C. § 2515 states, in relevant part:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding or before any court . . . if the disclosure of that information would be in violation of this chapter.

There is no comparable provision in WESCL.

1408, 1417-18 (8th Cir.), *cert. denied sub nom. Patterson v. U.S.*, 487 U.S. 1210 (1988) (even if contents of electronic surveillance were unlawfully disclosed, § 2515 does not require suppression); *Resha*, 767 F.2d at 287-89 (same); *In re Gordon*, 534 F.2d 197, 199-200 (9th Cir. 1976) (same). We therefore reject the defendant's argument that language in 28 U.S.C. § 2515 is applicable to this case.

The defendant attempts to distinguish federal decisions such as *United States v. Cardall*, 773 F.2d 1128 (10th Cir. 1985), and *Resha v. United States*, 767 F.2d 285 (6th Cir. 1985), *cert. denied*, 475 U.S. 1081 (1986), which do not permit suppression of illegally disclosed communications, by stating that they referred to the fruits of prior unlawful disclosures. By contrast, the defendant argues that he seeks to prevent the State from benefitting from a "current, illegal disclosure." Reply Brief for Defendant at 7-8.

This distinction is not tenable. In *Cardall* , the government sought to prevent the suppression at trial of wiretap evidence which had been illegally disclosed in a grand jury proceeding. In *Resha*, the government sought to reverse the district court's summary judgment order, which followed the district court's suppression of wiretap evidence that had been disclosed illegally in violation of 18 U.S.C. § 2517(2). In this case, the State seeks to prevent the suppression of evidence from a criminal complaint which had been illegally disclosed in contravention of Wis. Stat. § 968.29(2).

In all three situations, the government attempted to use evidence that had previously been disclosed illegally. What the defendant attempts to designate a "current illegal disclosure" in this case is indistinguish-

842

able from what he designates the "prior unlawful disclosures" that are at issue in *Cardall* and *Resha*.

The defendant also seeks to distinguish federal cases denying suppression as a remedy for illegal disclosure by arguing that what he seeks is not to "suppress the intercepted communications" but rather to "depriv[e] the state of the benefits of its illegal disclosures by striking them." Reply Brief for Defendant at 5. This distinction is also untenable. Evidence is suppressed precisely so that the party that has procured or used it wrongly may be deprived of its benefits. Howsoever the defendant designates and thereby attempts to distinguish his suggested remedy, its intent and effect are the same as suppression: to prevent its use. If, as the defendant contends in his brief, the State cannot establish probable cause without the legally intercepted communications at issue in this case, the consequence of striking those communications from the State's complaint would be to suppress them.[21]

---

[21] The defendant contends that his suggested remedy is authorized by this court's decision in *State v. Mann*, 123 Wis. 2d 375, 367 N.W.2d 209 (1985). The holding in *Mann* , however, is not applicable to the facts before us. *Mann* extended to criminal complaints the right to a *Franks* hearing, which is required by the Fourth Amendment when "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and is necessary to the finding of probable cause. *Mann*, 123 Wis. 2d at 384 (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). The court held that "the principles of *Franks* permit an attack on criminal complaints where there has been an omission of critical material [and] where inclusion is necessary for an impartial judge to fairly determine probable cause." *Mann*, 123 Wis. 2d at 385-86.

For the reasons set forth, we affirm the decision of the court of appeals on different grounds and, in accordance with the decision of the court of appeals, remand the cause to the circuit court with instructions to reinstate the State's original complaint under seal and to undertake further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is affirmed.

Justice Janine P. Geske did not participate.

---

The State was guilty of no such omissions in the complaint at issue in this case, and the defendant does not suggest that the wire communications which the State seeks to include in its complaint compromise either the veracity of its complaint or the integrity of the circuit court's determination of probable cause. Indeed, they arguably augment both.