STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Tory M. MEYER, Defendant-Appellant.

Supreme Court

*No. 96–2243–CR. Oral argument December 15, 1997.—Decided March 20, 1998.*

(Also reported in 576 N.W.2d 260.)

730

731

For the plaintiff-respondent-petitioner the cause was argued by *Stephen W. Kleinmaier*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief by *Richard B. Hahn* and *Holden & Hahn, S.C.*, Sheboygan and oral argument by *Richard B. Hahn*.

Amicus curiae was filed by *Nicholas L. Chiarkas*, state public defender, Madison and *William J. Tyroler*, first assistant state public defender, Milwaukee for the State Public Defender.

Amicus curiae was filed by *David R. Karpe*, Madison for the Wisconsin Association of Criminal Defense Lawyers.

¶ 1. N. PATRICK CROOKS, J. The State of Wisconsin (State) seeks review of an unpublished decision of the court of appeals[1] reversing the conviction of Tory M. Meyer (Meyer) for possession of tetrahydrocannabinols (THC) with the intent to deliver, as a party to a crime, contrary to Wis. Stat. §§ 939.05 and 161.41(1m)(h)2.[2] The Sheboygan County Circuit Court, Honorable Gary Langhoff presiding, denied Meyer's motion to suppress evidence seized during the execution of an anticipatory search warrant.[3] The cir-

---

[1] *State v. Meyer*, No. 96–2243-CR, unpublished slip op. (Wis. Ct. App. May 28, 1997).

[2] All future references to the Wisconsin Statutes will be to the 1993–94 volumes unless otherwise noted.

[3] An anticipatory warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not

cuit court also determined that the officers' act of dispensing with the rule of announcement in executing the warrant was reasonable. Meyer was convicted of possession of THC with the intent to deliver, as a party to a crime. On appeal the court of appeals reversed the circuit court's judgment and remanded the case, concluding the no-knock entry during the execution of the search warrant was in violation of Meyer's rights under the Fourth Amendment to the United States Constitution.

¶ 2. We conclude that the anticipatory search warrant is constitutional because it is supported by probable cause. We further conclude that the warrant is not unconstitutional merely because it lacks explicit conditional language stating that the warrant may not be executed until delivery of the contraband is made to the premises to be searched. Finally, we conclude that under *Richards v. Wisconsin*, 520 U.S. —, 117 S. Ct. 1416 (1997), an officer may dispense with the rule of announcement[4] when executing a search warrant if

presently) certain evidence of crime will be located at a specified place." 2 Wayne R. LaFave, *Search and Seizure* § 3.7(c), at 362 (3d ed. 1996).

[4] The rule of announcement, also known as the "knock and announce" rule, "requires the police to do three things before forcibly entering a home to execute a search warrant: 1) announce their identity; 2) announce their purpose; and 3) wait for either the occupants to refuse their admittance or. . .allow the occupants time to open the door." *State v. Stevens*, 181 Wis. 2d 410, 423, 511 N.W.2d 591 (1994). The rule serves three purposes: 1) protecting the safety of police officers and others; 2) protecting the limited privacy interests of the occupants of the premises to be searched; and 3) preventing the physical destruction of property. *See State v. Williams*, 168 Wis. 2d 970, 981–82, 485 N.W.2d 42 (1992), *overruled on other grounds, Stevens*, 181 Wis. 2d at 430.

the officer has a reasonable suspicion, based upon the particular facts of a given case and the reasonable inferences drawn therefrom, that knocking and announcing the officer's presence would be dangerous or futile or inhibit the effective investigation of the crime. Furthermore, in determining whether reasonable suspicion exists, an officer's training and prior experience in similar situations may be considered in combination with the particular facts. Accordingly, we remand the case to the circuit court for a determination whether, in consideration of the particular facts presented in this case, the officers had a reasonable suspicion that exigent circumstances existed to justify their no-knock entry.

The rule of announcement is long-established:

> In the 15th century, it was recorded that the sheriff could not break the door of a man's home to arrest him. The [federal] common law, however, did recognize the right of police officers to break the doors to arrest for a felony. Although the authorities differed somewhat as to what circumstances justified the breaking of doors, they universally required that the officer demand entry and announce his purpose—and be refused entry—before he could break in.

Patrick Crooks, Recent Decision, *Federal Rules of Criminal Procedure—Arrest—State Law Governs Propriety of Arrest Made Under Federal Warrant Where Federal Rules Are Silent*, 36 Notre Dame Lawyer 432, 432 (1961). American courts have recognized the rule of announcement as a common law requirement as early as 1813. *See* 2 Wayne R. LaFave, *Search & Seizure* § 4.8(a), at 598 (3d ed. 1996) (citing *Bell v. Clapp*, 10 Johns. 263 (N.Y.Sup.Ct. 1813)). Recently, the United States Supreme Court determined that the rule of announcement is also a constitutional requirement, holding that "this common law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment." *Wilson v. Arkansas*, 514 U.S. 927, 929 (1995).

I.

¶ 3. The facts are undisputed for purposes of our review. On November 17, 1995, Sheboygan County Sheriff's Detective Alonna Koenig (Koenig) applied for a warrant to search the premises located at 1033 St. Clair Avenue in the city of Sheboygan. In the affidavit supporting the warrant, Koenig stated the following:

¶ 4. Koenig had received information from United States Postal Inspector Dan Kakonis (Kakonis) regarding a package Kakonis had intercepted which he believed to contain controlled substances. Kakonis, who had eight years of experience working as a postal inspector, had worked with Koenig on prior occasions and provided her information which subsequently led to the interception of packages containing controlled substances and related paraphernalia. Pursuant to his training and personal experience, Kakonis had informed Koenig that packages containing controlled substances often contain handwritten labels, incorrect or fictitious names or addresses, a perfumed odor to disguise any pungent odor from the controlled substance, that such packages are often sent via Express Mail, and that the source of the packages is often a state from which controlled substances are generally shipped, such as California.

¶ 5. Koenig further stated that on November 16, 1995, at the Post Office in Milwaukee, Wisconsin, Kakonis profiled a package being sent Express Mail to a Tory "Mayor" at 1033 St. Clair Avenue, Sheboygan, Wisconsin. A mail carrier for that route informed Kakonis that there was an individual by the name of Tory Meyer residing at 1033 St. Clair Avenue. The return address indicated the package was en route from California. Kakonis intercepted the package and brought it to the Sheboygan County Sheriff's Depart-

736

ment. On November 17, 1995, a K–9 Unit (i.e., canine) from the Sheboygan County Sheriff's drug unit located the package from among other similar shaped and sized packages by scratching and biting at the package, indicating that the trained dog detected controlled substances in the package. Based upon this information, Koenig stated she believed that there would be "illegal controlled substances" located at 1033 St. Clair Avenue in Sheboygan, including cocaine and/or marijuana, and possibly related drug paraphernalia, including identifiers, drug ledgers, packaging materials, scales, and items used to ingest drugs.

¶ 6. Sheboygan County Circuit Court Commissioner Terence T. Bourke issued a search warrant at 1:30 p.m. on November 17, 1995, finding probable cause to believe that there were controlled substances "now located and concealed in and upon" the premises occupied by Tory Meyer at 1033 St. Clair Avenue, Sheboygan. The warrant authorized a search for controlled substances, drug ledgers or records, packaging materials, identifiers, scales, and items used for the consumption of illegal drugs.

¶ 7. Koenig delivered the intercepted package to an individual identifying himself as Tory Meyer at 1033 St. Clair Avenue on November 17, 1995, at approximately 2:20 p.m. Ten minutes later the drug enforcement unit executed the search warrant. The police knocked on the door and then broke the door in with a battering ram. The officers announced their presence while crossing the threshold of the premises. The officers searched the premises and found marijuana and other drug-related paraphernalia. As a result of the evidence seized, the State charged Meyer with possession of THC with the intent to deliver, as a party to a crime, contrary to Wis. Stat. §§ 939.05 and

161.41(1m)(h)2, and possession of a Schedule I[5] controlled substance without a tax stamp, as a party to a crime, contrary to Wis. Stat. §§ 939.05 and 139.95(1) and (2).

¶ 8. Meyer brought a motion to suppress the evidence seized during the execution of the warrant, asserting violations of his rights as guaranteed under the Fourth Amendment to the United States Constitution[6] and Article I, § 11 of the Wisconsin Constitution.[7] First, Meyer argued that the warrant was an unconstitutional anticipatory or conditional warrant as it was not supported by probable cause. Second, Meyer argued that the police entry was unconstitutional

[5] THC is a Schedule I controlled substance under Wis. Stat. § 161.14(4)(t).

[6] The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[7] Article I, § 11 of the Wisconsin Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

We limit our decision to an analysis of Meyer's rights under the federal constitution as this court has "consistently and routinely conformed the law of search and seizure under the Wisconsin Constitution to the law developed by the United States Supreme Court under the Fourth Amendment." *State v. Richards*, 201 Wis. 2d 845, 850–51, 549 N.W.2d 218 (1996) (citations omitted), *aff'd* 520 U.S. —, 117 S. Ct. 1416 (1997).

because the police did not knock and announce their presence, and that there was no probable cause for the police to dispense with the knock and announce requirement. Third, Meyer argued that the detention of his mail was illegal and, therefore, the search warrant based upon that detention was illegal.[8]

¶ 9. The circuit court denied Meyer's motion to suppress. The circuit court found that the postal inspector had a reasonable suspicion to detain the package and that the length of detention under the circumstances was reasonable. The court also found that there was a substantial basis for determining that probable cause existed to issue the search warrant. The circuit court determined that the warrant was not "technically an anticipatory search warrant," and did not specifically address Meyer's assertion that the warrant lacked the requisite conditional language. However, without correction from the court, defense counsel clarified his understanding that the circuit court was denying Meyer's argument that the lack of conditional language rendered the warrant unconstitutional. The circuit court further determined that the police were justified in making the no-knock entry.

---

[8] Meyer also brought a motion to dismiss Count II of the information, charging him with possession of a Schedule I controlled substance without a tax stamp, as a party to a crime, contrary to Wis. Stat. §§ 939.05 and 139.95(1) and (2). The circuit court denied this motion to dismiss. Meyer does not raise the issue on appeal since the charge was later dismissed on motion of the State.

We note that in *State v. Hall*, 207 Wis. 2d 54, 67, 557 N.W.2d 778 (1997), this court struck down the stamp law requiring dealers to purchase tax stamps for illegal drugs in their possession, concluding it unconstitutionally compelled self-incrimination.

¶ 10. Pursuant to a negotiated plea agreement Meyer agreed to plead no contest to the charge of possession of THC with intent to deliver, as a party to a crime, and the State agreed to move to dismiss the charge of possessing controlled substances without a tax stamp, as a party to a crime. Based on this plea, the circuit court found Meyer guilty of possession of THC with the intent to deliver, as a party to a crime, contrary to Wis. Stat. §§ 939.05 and 161.41(1m)(h)2. Meyer appealed.

¶ 11. The court of appeals reversed the judgment of the circuit court and remanded the case. The court of appeals recognized that the "blanket rule," allowing officers to dispense with the rule of announcement in cases involving felony drug investigations, set forth by this court in *State v. Stevens*[9] and reaffirmed in *State v. Richards (Richards I)*[10] had been rejected by the United States Supreme Court in *Richards v. Wisconsin (Richards II)*.[11] The court of appeals concluded that the execution of the search warrant was in violation of Meyer's rights under the Fourth Amendment to the United States Constitution pursuant to *Richards II*. The court of appeals rejected the State's reliance on *Segura v. United States*, 468 U.S. 796 (1984) to support its argument that regardless of the constitutionality of the entry, the evidence need not be suppressed because it was obtained in accordance with a valid search warrant issued by a neutral and detached commissioner. The court distinguished *Segura*, noting that the disposition in *Segura* was "carefully limited" to the facts presented in that case. The court of appeals also rejected the State's argument that the court should

---

[9] 181 Wis. 2d 410, 423, 511 N.W.2d 591 (1994).

[10] 201 Wis. 2d 845, 848, 549 N.W.2d 218 (1996).

[11] 117 S. Ct. at 1421.

adopt a good faith exception to the exclusionary rule[12] in this instance. The court of appeals declined the invitation, stating that it "is a function of our supreme court" to adopt an exception to the exclusionary rule.[13]

## II.

¶ 12. Before addressing the State's assertion that the no-knock entry was constitutional, we first consider Meyer's arguments that the warrant is unconstitutional because it (1) is not supported by probable cause; and (2) does not contain sufficient conditional language as is required in an anticipatory search warrant. We address each of Meyer's objections to the warrant in turn.

## A.

¶ 13. Anticipatory warrants are not unconstitutional per se. *See State v. Falbo*, 190 Wis. 2d 328, 335, 526 N.W.2d 814 (Ct. App. 1994) (citing *United States v. Garcia*, 882 F.2d 699, 702 (2d Cir. 1989)); *United States v. Leidner*, 99 F.3d 1423, 1426 (7th Cir. 1996), *cert. denied*, — U.S. —, 117 S. Ct. 1434 (1997); 2 Wayne R. LaFave, *Search and Seizure* § 3.7(c), at 364 (3d ed. 1996). Although an anticipatory warrant is "issued before the necessary events have occurred which will

---

[12] Under the exclusionary rule, evidence will be suppressed if it is "obtained as a direct result of an illegal search or seizure" or "later discovered and found to be derivative of an illegality." *Segura v. United States*, 468 U.S. 796, 804 (1984).

[13] The court of appeals did not address the validity of the search warrant, finding such a determination unnecessary in light of its holding that the execution of the search warrant violated Meyer's rights as guaranteed under the Fourth Amendment to the United States Constitution.

allow a constitutional search of the premises," such search warrants must still be based upon probable cause. *Garcia*, 882 F.2d at 702.

¶ 14. In reviewing whether probable cause exists to issue a search warrant, we give great deference to the warrant-issuing commissioner.[14] *See State v. Kerr*, 181 Wis. 2d 372, 379, 511 N.W.2d 586 (1994). As such, we are confined to the record as it existed before the commissioner and must consider whether he or she was " 'apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that they will be found in the place to be searched.' " *Id.* at 378 (quoting *State v. Starke*, 81 Wis. 2d 399, 408, 260 N.W.2d 739 (1978)). The commissioner's decision to issue a warrant will be upheld unless the facts before the commissioner at the time the warrant was issued were " 'clearly insufficient to support a finding of probable cause.' " *Kerr*, 181 Wis. 2d at 380 (quoting *State v.*

---

[14] In *United States v. Leidner*, 99 F.3d 1423, 1425 (7th Cir. 1996), *cert. denied*, — U.S. —, 117 S. Ct. 1434 (1997), the court determined that, based upon its prior holding in *United States v. Navarro*, 90 F.3d 1245, 1251 (7th Cir. 1996), probable cause determinations with regard to the issuance of search warrants are to be reviewed *de novo*. We disagree. This court has previously determined that the " 'deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.' " *State v. DeSmidt*, 155 Wis. 2d 119, 133, 454 N.W.2d 780 (1990) (quoting *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984)). The factual scenario in *Navarro* did not involve a search warrant; rather, it involved the consensual search of a vehicle after a probable cause stop and a consensual search of the defendant's home. *See Navarro*, 90 F.3d at 1249–50.

*Higginbotham*, 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991)).

■

¶ 15. "Anticipatory warrants are peculiar to property in transit." *Leidner*, 99 F.3d at 1425. Such warrants may be issued prior to the contraband being located at the premises. Thus, in the context of an anticipatory warrant,

> [t]he probable cause doctrine does not require that the contraband to be seized must presently be located at the premises to be searched, only that there is probable cause to believe that a crime has been (or is being) committed and that evidence of it can likely be found at the described locus *at the time of the search.*

*United States v. Ricciardelli*, 998 F.2d 8, 10 (1st Cir. 1993). *See also Leidner*, 99 F.3d at 1427.

■

¶ 16. In determining whether probable cause exists to issue an anticipatory search warrant, we must consider the "totality of the circumstances." *Falbo*, 190 Wis. 2d at 337. *See also Leidner*, 99 F.3d at 1427. The probable cause standard will not be satisfied unless the affidavit demonstrates that the contraband is on a "sure course" to the premises to be searched. *Leidner*, 99 F.3d at 1427 (citations omitted). We recognize that "government-controlled deliveries may be more likely to reach their destination than those deliveries expected within the normal course of a drug organization's operations." *Id.* at 1429.

■

¶ 17. In the present case, Koenig's affidavit stated that Kakonis is an experienced and reliable source who had on previous occasions provided her

with accurate information regarding drug dealing. Koenig further stated that the package addressed to Mayor (i.e., Meyer) was intercepted because its appearance evidenced several indicia of drug dealing, and that the package was subsequently identified in a canine sniff as containing controlled substances. Further, as an officer with extensive training and experience in the identification of controlled substances, Koenig stated it was her belief that "there will be located in and upon those premises evidence of a crime." Finally, the package was delivered by Kakonis in a controlled manner, monitored by the officers, and the officers' execution of the search warrant occurred very soon after the delivery. Based upon the "totality of the circumstances," *Leidner*, 99 F.3d at 1427, we determine that there were sufficient facts provided to the court commissioner to establish probable cause to believe that controlled substances were on a "sure course," *id.*, to the premises and would be present at 1033 St. Clair Street in Sheboygan at the time the warrant was executed.

### B.

¶ 18. Meyer also argues that the warrant was an unconstitutional anticipatory warrant because it does not contain any conditional language, that is, the warrant does not limit the officers' discretion in executing the warrant and does not sufficiently detail the events that must occur prior to its execution. Whether the language of the warrant satisfies the requisite constitutional requirements is a question of law. We review such issues of constitutional guarantees *de novo. See State v. Andrews*, 201 Wis. 2d 383, 389, 549 N.W.2d 210 (1996).

744

██

¶ 19. In *Leidner*, 99 F.3d 1423, the Seventh Circuit Court of Appeals addressed the need for specific conditional language in an anticipatory search warrant. The United States District Court for the Southern District of Illinois had determined that an anticipatory warrant's lack of an explicit requirement that the contraband be delivered prior to the execution of the warrant rendered the warrant invalid. *See id.* at 1425. In reversing the district court, the *Leidner* court stated that it found "no cases from this circuit requiring (as a matter of constitutional law) anticipatory warrants to explicitly state that the expected delivery must occur prior to execution of the warrant." *Id.* at 1427. The court recognized that although some courts appear to prefer conditional language, the only constitutional requirement in issuing an anticipatory search warrant is that it be supported by probable cause.[15] *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). We have already determined that the court commissioner had

_____

[15] Although language conditioning the execution of the warrant is not constitutionally required, the warrant in the present case is sufficient even if such conditional language were required. In her affidavit in support of the warrant, Koenig stated she believed that "illegal controlled substances" "will be located" on the premises, inferring that the search warrant would be executed only after the controlled delivery took place. *See Leidner*, 99 F.3d at 1427 n.4 ("We do not think an explicit conditioning statement is necessary where, as here, such a requirement is logically implicit."); *United States v. Rey*, 923 F.2d 1217, 1221 (6th Cir. 1991) ("A reasonable inference can be made that the warrant authorizes a search only after the controlled delivery has occurred.").

probable cause to issue the anticipatory search warrant; therefore, the warrant is valid.[16]

### III.

¶ 20. We next consider whether the officers' no-knock entry into the premises during the execution of the anticipatory search warrant was an unconstitutional entry in violation of the Fourth Amendment to the United States Constitution. "Whether searches and seizures pass constitutional muster is a question of law, which this court reviews without deference to the lower courts." *State v. Guy,* 172 Wis. 2d 86, 93, 492 N.W.2d 311 (1992). Our analysis of this issue is appropriately preceded by a history of the development of Wisconsin precedent setting forth the rule of announcement and exceptions under which a no-knock entry is constitutional in cases involving felony drug investigations.

¶ 21. In *State v. Cleveland,* 118 Wis. 2d 615, 628, 348 N.W.2d 512 (1984), this court determined that police officers are justified in making a no-knock entry "only if they have particular grounds in the given case to give them reasonable cause to believe" that exigent circumstances exist.[17] Despite the State's argument

---

[16] We recognize that the warrant in this case did not authorize a search for the intercepted mail package alone; rather, the warrant also authorized a search for other drug related paraphernalia. This does not render the warrant unconstitutionally overbroad. Where a search warrant is "based only on the knowledge of a controlled delivery," the warrant may authorize "a search for drug paraphernalia as well as contraband." *Rey,* 923 F.2d at 1220 (citations omitted).

[17] Exigent circumstances "include a reasonable belief that announcement of police presence would endanger the safety of the police or others, or a reasonable belief that unannounced

that drug dealers are generally likely to attempt to destroy evidence and are often armed, this court rejected the application of a "blanket rule" in narcotics cases that would allow an unannounced entry. *See id.* In a subsequent application of *Cleveland* this court held that a no-knock entry is justified if police have specific knowledge that an individual is in "possession of both firearms and large quantities of illegal drugs." *State v. Williams*, 168 Wis. 2d 970, 985, 485 N.W.2d 42 (1992).

¶ 22. In *Stevens*, 181 Wis. 2d at 425, we overruled our holding in *Cleveland* and adopted a blanket rule that police were justified in making a no-knock entry in an instance where there was evidence of felony drug delivery or dealing.[18] Our decision in *Stevens* was based upon our determination that "the easily disposable nature of narcotics provides police with evidence sufficient to form a reasonable belief that no-knock

entry is required to prevent the destruction of evidence." *State v. Cleveland*, 118 Wis. 2d 615, 624, 348 N.W.2d 512 (1984) (citation omitted), *overruled on other grounds, Stevens*, 181 Wis. 2d at 430. Exigent circumstances may also exist "when it is evident from the circumstances that the authority and purpose of the police is already known to those within the premises" rendering the rule of announcement "a superfluous act." 2 Wayne R. LaFave, *Search and Seizure* § 4.8(f), at 620 (3d ed. 1996) (citations omitted).

[18] On remand in *Stevens* the circuit court denied Stevens' motion to affirm the suppression order, relying on this court's holding in *State v. Richards*, 201 Wis. 2d 839, 549 N.W.2d 218 (1996). Stevens appealed, and the court of appeals reversed his conviction, relying on the United States Supreme Court's decision in *Richards v. Wisconsin*, 117 S. Ct. 1416. *See State v. Stevens*, 213 Wis. 2d 324, 570 N.W.2d 593 (Ct. App. 1997). The State petitioned this court for review, and we ordered the petition held in abeyance pending our decision in the present case.

entry is necessary to prevent the destruction of evidence." *Id.* (citations omitted).

¶ 23. We reaffirmed our adoption of the blanket rule in *Richards I*, 201 Wis. 2d at 847–48, holding that "exigent circumstances are always present in the execution of search warrants involving felonious drug delivery: an extremely high risk of serious if not deadly injury to the police as well as the potential for the disposal of drugs by the occupants prior to entry of the police." (Footnote omitted.) We concluded that police officers need not comply with the rule of announcement in the execution of a search warrant for evidence of felonious drug delivery. *See id.* Our decision to espouse the blanket rule was not unanimous, however. Justice Abrahamson concurred in the opinion in light of the facts presented in *Richards I* but rejected the blanket rule, advocating for dispensing with the rule of announcement only where the particular facts in a given case evince exigent circumstances such that the officer's no-knock entry is reasonable. *See id.* at 878.

¶ 24. On appeal the United States Supreme Court affirmed our judgment in *Richards I* but overruled our reaffirmation of the blanket rule approach first adopted in *Stevens. See Richards II*, 117 S. Ct. at 1421. The Supreme Court recognized that although drug investigations often involve special safety risks and the likely destruction of evidence, such is not the case in every drug investigation. *See id.* The Supreme Court also acknowledged concern regarding the relative ease of applying a blanket rule exception to other crimes, such as bank robberies, where risks of danger and evidence destruction are frequent. *See id.* In sum the Supreme Court agreed with the concurrence in *Richards I*.

748

Thus, the fact that felony drug investigations may frequently present circumstances warranting a no-knock entry cannot remove from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce *in a particular case*. Instead, in each case, it is the duty of a court confronted with the question to determine whether the *facts and circumstances of the particular entry* justified dispensing with the knock-and-announce requirement.

In order to justify a "no-knock" entry, the police must have a *reasonable suspicion* that knocking and announcing their presence, *under the particular circumstances*, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standard. . .strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries. This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.

*Id.* at 1421–22 (internal citations omitted).

¶ 25. The Supreme Court reaffirmed its holding in *Richards II* in a recent unanimous opinion. *See United States v. Ramirez*, — U.S. —, 118 S. Ct. 992, 1998 WL 88055 (1998). In *Ramirez*, the Supreme Court stated that it rejected a blanket rule exception to the rule of announcement in felony drug investigations in *Richards II*. *See id.* at *4. Rather, an officer must consider the "particular circumstances" in each case. *Id.* (quoting *Richards II*, 117 S. Ct. at 1421). "Under *Richards*, a no-knock entry is justified if police have a 'reasonable suspicion' [under the particular circum-

stances] that knocking and announcing would be dangerous, futile, or destructive to the purposes of the investigation." *Ramirez*, 1998 WL 88055 at *4.

¶ 26. The parties in the present case agree that the blanket rule exception to the rule of announcement was rejected in *Richards II* but disagree regarding what type of particular information or evidence will satisfy the reasonable suspicion test justifying a no-knock entry.

¶ 27. The State contends that police officers may rely on their training and previous experience in similar situations to satisfy the particularity requirement. The State bases its argument in large part on *Terry v. Ohio*, 392 U.S. 1 (1968), and language therein which provides that an officer's reasonable suspicion may be based upon the nature of the crime. From this, the State apparently advocates that: (1) based upon prior experience in similar cases, an officer may reasonably infer that complying with the rule of announcement would result in danger or the destruction of evidence; and (2) such prior experience satisfies the reasonable suspicion test of *Richards II* for dispensing with the rule of announcement, as long as there is no specific evidence that would negate an officer's reasonable suspicion of danger or destruction in a particular case.

¶ 28. Meyer, on the other hand, argues that facts specific to a particular party must be shown to support reasonable suspicion that exigent circumstances exist. Meyer cites to language in *Stevens* which enumerated factors that may be considered in justifying dispensing with the rule of announcement, such as evidence of a party's prior sales of controlled substances or evidence of the amount of drugs involved in a particular case, and argues that no similar information was available to the officers in this case.

¶ 29. We hold that particular facts must be shown in each case to support an officer's reasonable suspicion that exigent circumstances exist. As such, we reject the State's proffered reasonable suspicion test which is essentially equivalent to the blanket rule rejected in *Richards II*.

¶ 30. In *Richards II* the Supreme Court placed an affirmative duty on officers to show reasonable suspicion under the particular circumstances that exigent circumstances exist to dispense with the rule of announcement. *See Richards II*, 117 S. Ct. at 1421. The State's proposed rule authorizes a no-knock entry during the execution of a search warrant in a felony drug investigation under any circumstance, absent information that would negate such generalized reasonable suspicion. Such a test would permit an officer to presume that there is reasonable suspicion in all cases involving felony drug investigations, thereby allowing the officer to step beyond the mandates of *Richards II*.

¶ 31. An adoption of the State's proposed test would hamper the protections against unreasonable search and seizure afforded to individuals under the Fourth Amendment to the United States Constitution. The "scheme of the Fourth Amendment becomes meaningful only when it is assured that. . .the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search. . .in light of the particular circumstances." *Terry*, 392 U.S. at 21. *See also Richards*, 117 S. Ct. at 1421. In instances where no particular facts are presented to show exigent circumstances allegedly justifying a no-knock entry, there is nothing upon which a reviewing court can base a determination of reasonable suspicion.

¶ 32. Our holding that reasonable suspicion must be shown from particular facts does not thwart an officer's ability to also rely on his or her training and/or prior experience in similar cases. As the Supreme Court recognized in relation to the facts presented in *Richards II*, the "actual circumstances—petitioner's apparent recognition of the officers *combined with* the easily disposable nature of the drugs—justified the officers' ultimate decision to enter without first announcing their presence and authority." *Id.* at 1422 (emphasis supplied).

¶ 33. The State cites to several United States Supreme Court cases that allow an officer to consider the nature of a crime as well as an officer's training or experience to satisfy the particularity requirement for reasonable suspicion. Our holding is consistent with each of those cases as in every instance the generalized knowledge of the officer was considered in combination with specific, particular facts. *See, e.g., Terry*, 392 U.S. at 27 ([D]ue weight must be given. . .to the specific reasonable inferences which [an officer] is entitled to draw from the facts in light of his experiences."); *Florida v. Rodriguez*, 469 U.S. 1, 6 (1984) (Stop was reasonable in light of "strange movements in [defendant's] attempt to evade the officers," "contradictory statements," and officer's "special training in narcotics surveillance and apprehension."); *United States v. Cortez*, 449 U.S. 411, 418 (1981) (Inferences can be made from "objective observations, information from police reports. . .and consideration of the modes of patterns of operation of certain kinds of lawbreakers."); *United States v. Mendenhall*, 446 U.S. 544, 565 (1980) (Powell, J., concurring) (Officers "observed respondent engaging in conduct that they reasonably associated with criminal activity."). An officer's experience and train-

ing are valid, relevant considerations. However, without an application of generalized knowledge to the particular facts of a given case, such considerations are insufficient to support a determination of reasonable suspicion.

¶ 34. Although we reject the State's proposed reasonable suspicion test, we do recognize that there may be instances where specific facts may negate an officer's otherwise reasonable act of dispensing with the rule of announcement. The reasonableness of an officer's decision to enter a premise without first knocking and announcing his or her presence must be evaluated by a reviewing court as of the time of the entry. *See Richards II*, 117 S. Ct. at 1422. Therefore, even if the particular facts initially available to an officer provide reasonable suspicion of exigent circumstances, that reasonable suspicion may be negated where additional facts are revealed prior the execution of the search warrant that would negate an officer's earlier suspicion of exigent circumstances. *Cf. Cleveland*, 118 Wis. 2d at 627 (Where a no-knock warrant has been issued "[c]ircumstances which justify non-compliance with the rule of announcement. . .might change. . .before the officer's entry.").

¶ 35. We thus conclude that pursuant to *Richards II*, reasonable suspicion of exigent circumstances allowing an officer to dispense with the rule of announcement must be shown by the particular facts in each case.[19] *See Ramirez*, 1998 WL 88055, at *4.

[19] In *United States v. Ramirez*, — U.S. —, 118 S. Ct. 992, 1998 WL 88055 (U.S. 1998), the United States Supreme Court held that the Fourth Amendment does not hold officers to a heightened standard of reasonable suspicion when a no-knock entry results in the destruction of property. Thus, although the

Accordingly, the mere absence of specific facts that would negate reasonable suspicion is insufficient to justify a no-knock entry.

¶ 36. Our decision to affirm the court of appeals' reversal of the judgment of conviction is qualified. Although affirmation is appropriate given our holding, the remedy afforded Meyer must be appropriate to the constitutional violation that may have occurred in this case. *See Waller v. Georgia*, 467 U.S. 39, 49–50 (1984); *State v. Webb*, 154 Wis. 2d 320, 327, 453 N.W.2d 628 (1990), *rev'd on other grounds*, 160 Wis. 2d 622, 467 N.W.2d 108 (1991). The proper remedy is to remand this case to the circuit court for a new suppression hearing. *See id.* At the hearing the circuit court must determine whether, consistent with *Richards II*, the officers had a reasonable suspicion based upon the particular facts of this case that exigent circumstances existed to justify dispensing with the rule of announcement. If the evidence at the hearing satisfies the circuit court that reasonable suspicion existed to justify the no-knock entry, the judgment of conviction should be reinstated. *See Webb*, 154 Wis. 2d at 327.

## IV.

¶ 37. In sum, we conclude that the anticipatory search warrant in the present case was constitutional as it was supported by probable cause. We also conclude that there is no constitutional requirement that an anticipatory search warrant contain explicit conditional language limiting the execution of the warrant

officers used a ram to break down Meyer's door in the present case, the officers were not required to show more specific inferences of exigency to support their reasonable suspicion.

until after the delivery of the contraband. Finally we conclude that, consistent with the requirements set forth by the United States Supreme Court in *Richards II*, an officer may dispense with the rule of announcement when executing a search warrant if the officer has a reasonable suspicion, based upon the particular facts in a given case and the reasonable inferences drawn therefrom, that knocking and announcing the officer's presence would be dangerous or futile or inhibit the effective investigation of the crime. Furthermore, in determining whether reasonable suspicion exists, an officer's training and prior experience in similar situations may be considered in combination with the particular facts.[20]

*By the Court.*—The decision of the court of appeals is modified and affirmed and, as modified, cause remanded with directions.

¶ 38. WILLIAM A. BABLITCH, J. (*concurring*). Although I concur with the mandate, I respectfully disagree with the majority's standard regarding the issue of when the police may forego the rule of announcement in drug dealing cases.

¶ 39. The foundation for government action under the Fourth Amendment is reasonableness. ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures,. . . ." U.S. Const. amend. IV.). In determining a reasonable standard with respect to the question of

---

[20] Because we conclude the warrant was constitutional and we are remanding this case for a determination of the constitutionality of the officers' no-knock entry, we find it unnecessary to consider an application of the exclusionary rule or the State's proffered argument that a good faith exception should apply.

when the police must abide by the rule of announcement, the underlying question should be this: if you were a police officer, would you be the first one through the door after knocking, announcing, and awaiting a response?

¶ 40. To place this issue in context, it is important to note the requirements of the rule of announcement, referred to as "knock and announce."[1] The rule of announcement "requires police officers to do three things before forcibly entering a home to execute a search warrant: 1) announce their identity; 2) announce their purpose; and 3) wait for either the occupants to refuse their admittance or, in the absence of an express refusal, allow the occupants time to open the door." *State vs. Stevens*, 181 Wis. 2d 410, 423, 511 N.W.2d 591 (1994). Federal courts have similar requirements. *See, e.g., U.S. v. Markling*, 7 F.3d 1309, 1318 (7th Cir. 1993); *U.S. v. Leichtnam*, 948 F.2d 370, 374 (7th Cir. 1991); *U.S. v. Moore*, 91 F.3d 96, 98 (10th Cir. 1996); *U.S. v. Knapp*, 1 F.3d 1026, 1031 (10th Cir. 1993).

¶ 41. The majority states that, absent "particularized facts" about the particular case, the police must abide by the rule of announcement before executing the search warrant for evidence of drug dealing. The problem with the majority rule is not that it requires particularized facts to dispense with the rule of announcement. The problem is it demands too many "particularized facts." Because the majority demands too much, I respectfully disagree.

¶ 42. The majority requires police to knock, announce, and await a response when executing a

---

[1] Given that there are actually three requirements, it should more accurately be termed the rule of "knock, announce, and await a response."

search warrant for evidence of drug dealing even when all of the following conditions are present: 1) reasonable grounds to believe that drugs are being sold on the premises, concurred in by a neutral magistrate who issued the search warrant; 2) a belief based upon past experience and/or training that knocking, announcing, and awaiting a response poses a very dangerous situation to the officers; 3) knowledge based upon past experience and/or training that the evidence inside the house might be destroyed; and, 4) nothing in the particular case to negate their beliefs that knocking, announcing, and awaiting a response poses a serious danger to them and/or potential destruction of evidence.

¶ 43. The majority says the police must have more; without more "particularized" knowledge about the particular dangerousness of this particular situation, the police must first knock, announce, and await a response before entering the premises. I disagree. I conclude that when all of the above conditions are met, the police are not required to comply with the rule of announcement.

¶ 44. The serious, in fact deadly danger potentially awaiting the police in these circumstances can scarcely be understated. The United States Solicitor General's Office filed an amicus brief in *Richards v. Wisconsin*, 117 S.Ct. 1416 (1997), reciting what is now the universally recognized tie between drugs and firearms.

> Indeed, the courts have frequently recognized that there is a well-established association between guns and drugs; firearms are 'tools of the [narcotics] trade.' *United States v. Bonner*, 874 F.2d 822, 824 (D.C. Cir. 1989). And the guns that drug traffickers prefer are often machine guns and other heavy

757

weaponry that pose the greatest danger to police officers and bystanders. *See, e.g., United States v. Kirk*, No. 94–50472, 1997 WL 40602 [105 F.3d 997, 1002–03 n.1], at *9 n.1 (5th Cir. Feb. 3, 1997) (en banc) (opinion of Higginbotham, J.) (citing 29 recent federal appellate cases).

Once an officer has announced his intention to enter a home to execute a search for contraband or to make an arrest, the drug trafficker has a heightened incentive to prevent the officer from attaining those goals. *See* Bureau of Justice Statistics, U.S. Dep't of Justice, *Drugs, Crime, and the Justice System: A National Report*, 5 (Dec. 1992) ('To avoid being arrested and punished for trafficking, drug dealers commit violent crimes against police and threaten informants or witnesses.'). Accordingly, 'the law has uniformly recognized that substantial dealers in narcotics possess firearms' and that 'entrance into a situs of drug trafficking activity carries all too real dangers to law enforcement officers.' *United States v. Kennedy*, 32 F.3d 876, 882–883 (4th Cir. 1994) (internal quotation marks omitted; citing cases), cert. denied, 115 S.Ct. 939 (1995).

Amicus Curiae Brief for the United States Solicitor General's office at 13–15 (footnote omitted), *Richards*, 117 S.Ct. at 1416.[2]

¶ 45. I do not believe the standard set by the majority is what the U.S. Supreme Court demands under *Richards*. *See* 117 S.Ct. at 1421–22. I agree with the state that under *Richards* the police may dispense

---

[2] The United States also cited a series of cases supporting a police officer's reasonable suspicion that the occupants would attempt to throw away or destroy the evidence. *See* Amicus Curiae Brief for the United States Solicitor General's office at 19–20 n.9, *Richards v. Wisconsin*, 117 S.Ct. 1416 (1997).

758

with the rule of announcement when executing a search warrant involving drug dealing when there is no specific evidence that would negate an officer's reasonable suspicion of danger to themselves or destruction of evidence, based on the officer's training and experience. This was also the position taken by the Solicitor General of the United States in *Richards*. I conclude that the U.S. Supreme Court in *Richards* adopted the position of the Solicitor General.

¶ 46. There is no question that a particularity requirement must be met to satisfy the reasonable suspicion standard. However, as the state points out, courts have not demanded the same kind of specific information that is needed to satisfy the probable cause standard. In reasonable suspicion cases, the police and courts can rely on their training and experience in similar situations to satisfy the particularity requirement. *See, e.g., Florida v. Rodriguez*, 469 U.S. 1, 6 (1984); *United States v. Cortez*, 449 U.S. 411, 418 (1981); *United States v. Mendenhall*, 446 U.S. 544, 565–66 (1980) (Powell, J., concurring); *United States v. Buenaventura-Ariza*, 615 F.2d 29, 36 (2nd Cir. 1980).

¶ 47. The Court's reasoning in *Terry v. Ohio*, 392 U.S. 1, 6–7 (1968), cited by the majority, is illustrative with respect to the particularity requirement. The Court said that frisking a suspect for weapons on reasonable suspicion is allowed

> where [the officer] has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in

> danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion of 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Terry*, 392 U.S. at 27 (citations and footnote omitted).

¶ 48. Do the police in drug dealing cases have "reason to believe" that they are dealing with armed and dangerous individuals? In the absence of evidence negating their belief, police have every reason to believe based on the overwhelming documentation that this situation is fraught with danger.

¶ 49. Are the police in drug dealing cases "warranted in the belief that (their) safety or that of others [may be] in danger?" In the absence of evidence negating their belief, it is difficult to see how that question can be answered in anyway but the affirmative.

¶ 50. The state in its brief in this case makes a particularly telling argument in its summation of the significance of *Terry* to the issue before us:

> In *Terry*, the officer's reasonable suspicion that the suspects were armed was based on the nature of the crime that he suspected they were about to commit. He had no other specific information about the suspects that indicated they were armed or dangerous. In finding that the information known to Officer McFadden warranted his belief that the suspect was armed and thus presented a threat to the officer's safety, the Court said in *Terry*, 392 U.S. at 28:
>
>> We think on the facts and circumstances Officer McFadden detailed before the trial judge a reasonably prudent man would

760

have been warranted in believing petitioner was armed and thus presented a threat to the officer's safety while he was investigating his suspicious behavior. The actions of Terry and Chilton were consistent with McFadden's hypothesis that these men were contemplating a daylight robbery—which, it is reasonable to assume, would be likely to involve the use of weapons—and nothing in their conduct from the time he first noticed them until the time he confronted them and identified himself as a police officer gave him sufficient reason to negate that hypothesis.

The Court's comments are significant in at least three respects. First, the Court made it clear that it was reasonable for Officer McFadden to conclude that the suspect was armed and dangerous based on the reasonable suspicion to believe that he was armed. In other words, once there was reasonable suspicion to believe the suspect was armed, the officer could conclude that the suspect was dangerous. Second, the Court relied only on the nature of the crime of which Terry was suspected of planning in assuming that a weapon would be involved. The Court cites no other information specific to Terry except the nature of the crime as a basis for reasonably suspecting that he was armed. Third, Officer McFadden could assume that Terry was armed based on the nature of the crime when no other information negated that hypothesis. Thus, where no information otherwise negates the hypothesis, the officer can rely on his experience and the nature of the suspected crime to conclude that the suspect is armed.

Brief of State of Wisconsin at 32–33, *Meyer*, No. 96–2243-CR.

¶ 51. The state in its brief goes on to explain that in *Richards* the Supreme Court adopted the arguments made by the Solicitor General that the police are entitled to rely on their experience and training in the absence of information that negates the threat of danger or destruction of evidence.

During the argument, one justice asked the Wisconsin Attorney General why the blanket rule was necessary when in most cases the police could justify the no knock entry with 'virtually no trouble.' 1997 WL 143822 at 28 (hereafter the oral argument transcript will be cited as T:—). The justice indicated that the state could probably always justify the no knock entry in drug cases except in the rare case where the informant said there were no guns or the marijuana was stored in bales in the barn so there was no risk of destruction (T:28). When the Attorney General said the justice was stating the position of the Solicitor General (the United States), there was no dispute from the court (T:30).

When the Court issued its opinion, it appeared to again take the position of the United States because it said several times that felony drug investigations may frequently involve both danger and the threat of destruction of evidence. *Richards*, 117 S.Ct. at 1420, and 1421 (twice). In addition, after explaining that the standard was reasonable suspicion, the Court said that the 'showing is not high.' *Richards*, 117 S.Ct. at 1422. By recognizing that felony drug investigations frequently involve danger and the threat of destruction of evidence and by recognizing that the showing the state must make is not high, the Court took the same position as the justice at oral argument and as the United States in its brief.

The Brief of the United States took the same position that the Supreme Court took in *Terry*, 392 U.S.

at 28, which is that police experience can provide reasonable suspicion when there are no particular actions or information from the suspect to negate the suspicion. In rejecting the blanket rule the Supreme Court again approved the United States' argument because the reasons the Court gave for the blanket rule being overgeneralized were essentially the same as the reasons the United States gave for the officers' general experience being negated: the dangerous drug dealer might not be present when the police come and the police may have information showing that the evidence cannot be destroyed. *Richards*, 117 S.Ct. at 1421.

Therefore, in light of the cases that have considered stop and frisk situations, in light of the cases cited in the Brief of the United States and in light of the response of the United States Supreme Court to the arguments of the Solicitor General both during oral argument and in the opinion, it is proper for the police to rely on experience in similar cases to infer that danger or threat of the destruction of evidence is present in a specific case. The police are entitled to rely on that experience in absence of information that negates it. This approach to no knock cases differs from the blanket rule because it is based on experience in similar cases and on the nature of the crime; and it acknowledges that the no knock entry is improper when the police possess the negating information. This approach is the one the Untied States took in *Richards v. Wisconsin*, which was apparently approved by the United States Supreme Court.

Brief of the State of Wisconsin at 43–45, *State v. Meyer*, No. 96–2243-CR.

¶ 52. The rule announced today by the majority is deeply troubling. Because it is so unworkable in the reality of the street, the consequences are potentially

devastating. It may, at worst, result in serious injury if not death to police officers attempting to conform with the majority's mandate. It might result in less, not more, drug enforcement due to refusal of the police to secure or execute search warrants when they do not have the "particularized knowledge of exigent circumstances" demanded by the majority because of the danger presented to them when required to knock, announce, and await a response.

¶ 53. To end as I began, assume you are a police officer standing outside the door with 1) a reasonable belief, concurred in by a neutral magistrate, that evidence of drug dealing is present; and, 2) a belief based on your experience and training that when you enter that door you are faced with a situation fraught with potential serious danger to yourself and the other police present; and, 3) nothing in the circumstances of this case negates that belief; and, 4) based on the majority's rule, you knock, announce your presence, identity, and purpose, and await a response. Would you be the first one through the door?

¶ 54. Not I.

¶ 55. I am authorized to state that Justices Donald W. Steinmetz and Jon P. Wilcox join in this opinion.

¶ 56. JANINE P. GESKE, J. (concurring). I join the majority opinion. I write separately to address the concurring opinion of Justice Bablitch.

¶ 57. Justice Bablitch takes issue with the majority's requirement of "too many 'particularized facts.' " Conc. op. at 756. He believes, because of the "deadly danger potentially awaiting the police in these circumstances," concurring op. at 757, that when four

conditions[1] are met the police should not be required to knock, announce, and await a response when executing a search warrant for evidence of drug dealing. *See id.*

¶ 58. I agree with Justice Bablitch's policy concerns, just as I agreed with him in *State v. Richards*, 201 Wis. 2d 839, 549 N.W.2d 218 (1996) and *State v. Stevens*, 181 Wis. 2d 410, 511 N.W.2d 591 (1994).[2] In those cases, the majority held that because exigent circumstances were always present in the execution of a search warrant involving a felonious drug delivery, the police were not required to knock and announce their identity before making a forced entry. *See Richards*, 201 Wis. 2d at 847–48, *Stevens*, 181 Wis. 2d at 424–25. However, our majority view in *Richards* was rejected by a unanimous United States Supreme Court which held that a blanket exception for felony drug investigations to the knock-and-announce rule violates the Fourth Amendment to the United States Constitution. *See Richards v. Wisconsin*, 520 U.S. —, 117 S. Ct. 1416,

---

[1] Those four conditions are:

1) reasonable grounds to believe that drugs are being sold on the premises, concurred in a by a neutral magistrate who issued the search warrant;

2) a belief based upon past experience and/or training that knocking, announcing, and awaiting a response poses a very dangerous situation to the officers;

3) knowledge based upon past experience and/or training that the evidence inside the house might be destroyed; and

4) nothing in the particular case to negate their beliefs that knocking, announcing, and awaiting a response poses a serious danger to them and/or potential destruction of evidence.

[2] Then Justice Shirley S. Abrahamson wrote concurrences in both *State v. Richards*, 201 Wis. 2d 839, 549 N.W.2d 218 (1996) and *State v. Stevens*, 181 Wis. 2d 410, 511 N.W.2d 591 (1994).

■■■■■■■■

■■■■■■■■

1421 (1997). As state supreme court justices we are bound to follow the constitutional decisions of the highest court in the land.

¶ 59. Neither today's decision in this case, nor the Supreme Court's decision in *Richards*, go so far as to require "too many particularized facts." What those holdings require is for a reviewing court to determine only "whether the facts [however many exist in that situation] and circumstances of the particular entry" justify dispensing with the knock-and-announce requirement. *Richards*, 117 S. Ct. at 1421; *see, also*, majority op. at 755.

¶ 60. Justice Bablitch's test would preserve a blanket rule unless police possess evidence "to negate their beliefs that knocking, announcing, and awaiting a response poses a serious danger to them and/or potential destruction of evidence." Concurring op. at 757. Were this court to adopt the "negative evidence" condition suggested by the state and endorsed by Justice Bablitch, we would be ignoring the United States Supreme Court's requirements that the facts and circumstances of the particular situation justify a "no-knock" entry. *See Richards*, 117 S. Ct. at 1421, majority op. at 751. Nowhere in the *Richards* opinion does the Court include this "negative evidence" condition. Instead, the Court balanced the public policy concerns for the personal safety and evidentiary destruction in felony drug investigations against the privacy protections mandated by the Fourth Amendment. *See id.*, 117 S.Ct. at 1421–22.

¶ 61. This case-specific balancing is consistent with a long line of Supreme Court decisions. The Court conducted a similar balancing in *Terry v. Ohio*, 392 U.S. 1, 21 (1968), wherein it stated: "[I]n justifying the particular intrusion the police officer must be able to

point to specific and articulable facts which, taken together with rational inferences, from those facts, reasonably warrant intrusion" (footnote omitted). The arresting officer in *Terry* had at least 30 years of patrol experience. *See* 392 U.S. at 5. To legally conduct the search and seizure of the individual suspects, he needed more than professional longevity. Even the *Terry* quotation used by Justice Bablitch to dilute the particularity requirement operates to support the requirement: "due weight must be given. . .to the *specific* reasonable inferences which [the officer] is entitled to draw *from the facts* in light of his experience." 392 U.S. at 27 (emphasis added). The majority opinion today is consistent with *Richards*.

¶ 62. Despite Justice Bablitch's fears, the Supreme Court does not require that police officers take unnecessary risks in the performance of their duties, and neither does this court. *See Terry*, 392 U.S. at 23. But the final assessment of whether the risks to police safety or to evidence preservation in a particular case justify a no-knock entry must rest in "the neutral scrutiny of a reviewing court." It is for the court to determine "whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement." *Richards*, 117 S.Ct. at 1421. The majority's decision today accurately reflects that we are bound by this rule.

¶ 63. For the reasons set forth, I concur.

¶ 64. I am authorized to state that Chief Justice Shirley S. Abrahamson, Justice Ann Walsh Bradley, and Justice N. Patrick Crooks join this opinion.