State of Wisconsin, Plaintiff-Respondent,
v.
Mel Scott Regazzi, Defendant-Appellant.
No. 03-1770-CR.
Court of Appeals of Wisconsin.
Opinion Filed: July 30, 2004.
Before Wedemeyer, P.J., Schudson and Curley, JJ.
¶1. CURLEY, J.
Mel Scott Regazzi appeals from a judgment of conviction for possessing marijuana with intent to deliver in order to challenge the denial of his suppression motion. The issue is whether the seizure of marijuana during the execution of a search warrant for stolen property was lawful. We conclude that many of the descriptions of the targeted items in the warrant did not meet the Fourth Amendment's particularity requirement because law enforcement had more specific descriptions that should have been used. Moreover, because the police admittedly were not relying on the warrant when the marijuana was seized, the otherwise unlawful seizure was not validated by the severability, plain view, or good faith doctrines. Therefore, we reverse the judgment and remand the cause for further proceedings.

I. Background.
¶2. This marijuana prosecution resulted from a search of Regazzi's residence for stolen property. Police in several Wisconsin counties were investigating approximately twenty-five burglaries and various thefts over a nine-month period. One of the suspects told police that many of the stolen items had been taken to the Milwaukee home of her uncle, Mel Regazzi. Police consequently obtained a search warrant for Regazzi's residence, describing the stolen items as:
An 11 horsepower air compressor with a Honda engine; Honda generators;
Hand tools and power tools for the construction trade; A musical saxophone and clarinet; and, China dinnerware.
¶3. During that search, police entered a small room expressly to examine a JVC camcorder case that had been reportedly stolen, although it was not mentioned in the warrant. As Fox Lake Chief of Police Patrick Lynch approached the camcorder bag, it became apparent that it contained marijuana. Regazzi moved to suppress the marijuana because the search warrant's description of the targeted items was not sufficiently particular, and law enforcement exceeded the scope of their authority pursuant to the warrant.
¶4. At the suppression hearing, Beaver Dam Police Detective Jeffrey Meyer explained how law enforcement conducted the search of Regazzi's residence. Detective Meyer told Regazzi, "he's [not] under arrest and that we were here to recover stolen property ...." Detective Meyer continued to explain how he and Regazzi
talked about the manner in which we were going to remove items from [his] home and that if he could point out things he knew were stolen items, he'd point them out to me; we would take those items. And if there were things that weren't stolen items  and we had some discussion of whether they were or weren't stolen. We would discuss that, make a determination and  and if they weren't [we'd] leave them. And if they were, we would take them.
Chief Lynch testified that
[o]nce they were in there they were talking with [Regazzi], explain[ing] why we were there. [Regazzi] was telling them this is stolen; this stolen; this is stolen. The officers were bringing items up, and [Regazzi] was being very cooperative telling them, yes, this is stolen. Also one item that was stolen was a JVC camcorder, and it was sitting on the floor [of a small room off of the main dining room].
Chief Lynch's direct testimony continued:
A. I could see [the JVC camcorder bag] from where I was, and I walked over and looked at it, yes.
Q. How did you  Why did you believe that item was stolen?
A. Because we had one stolen, and it said right on the case JVC camcorder on the bag.
Q. Did you look closer at that bag?
A. I observed that the bag was unzipped and opened, and then I bent over and looked at it.
Q. What did you see?
A. Large plastic bag with g[r]e[e]n leafy vegetable material inside.
On cross-examination however, Chief Lynch admitted that the warrant did not mention a JVC camcorder.

II. Procedural Chronology.
¶5. Regazzi was charged with possessing marijuana with intent to deliver. He moved to suppress the marijuana seized. The trial court denied the suppression motion, ruling that, although some of the descriptions were not sufficiently particular, the doctrines of severability, plain view and good faith validated the seizure of marijuana.
¶6. Regazzi pled guilty to possessing no more than five hundred grams of marijuana with intent to deliver, contrary to Wis. Stat. § 961.41(1m)(h)1 (2001-02).[1] The trial court imposed and stayed a four-year sentence to run consecutive to any other sentence Regazzi was serving, comprised of two, two-year periods of confinement and extended supervision, and imposed a four-year term of probation. Regazzi appeals to challenge the denial of his suppression motion. See Wis. Stat. § 971.31(10).

III. Analysis.
¶7. The State contends that Regazzi challenged only the facial validity of the warrant. In his suppression motion, however, he challenged the scope of the search, complaining, "the police looked in areas where the suspected items could not have been located and therefore exceeded the scope of their authority under the warrant." He further alleged that "the police [did not] confine[] their search to areas within the scope of the search warrant." Although at the suppression hearing Regazzi initially acknowledged that he contemplated limiting his challenge to the facial validity of the warrant, the trial court ultimately ordered the parties to "make a complete record to make sure we don't have to come back again for another evidentiary hearing [on the suppression issue]." Consequently, Regazzi's challenge had not been waived.

A. The particularity requirement.
¶8. "Both the Fourth Amendment and Article I, § 11, require that search warrants not only `particularly' describe the place to be searched, but also the `things to be seized.' .... Thus, where the search exceeds the warrant's description of either the place to be searched or the items to be seized, the evidence must be excluded." State v. Munroe, 2001 WI App 104, ¶9, 244 Wis. 2d 1, 630 N.W.2d 223 (citations omitted). "The use of a generic term or general description is constitutionally acceptable only when a more specific description of the items to be seized is not available." State v. Noll, 116 Wis. 2d 443, 451, 343 N.W.2d 391 (1984).
¶9. This court reviews the denial of a suppression motion as a question of constitutional fact. We reverse the findings of historical fact only if they are contrary to the great weight and clear preponderance of the evidence; we independently apply constitutional principles to those historical facts to determine whether the language of the warrant is constitutional. See State v. Phillips, 218 Wis. 2d 180, 189-90, 577 N.W.2d 794 (1998); State v. Meyer, 216 Wis. 2d 729, 744, 576 N.W.2d 260 (1998). Whether the search warrant's descriptions of the targeted items are sufficiently particular to pass constitutional muster is a question of law. See Meyer, 216 Wis. 2d at 744.
¶10. Regazzi acknowledges that the "11 horsepower air compressor with a Honda engine" meets the particularity requirement. The remaining targeted items, however  tools, musical instruments, and dishes  could be found in many typical homes. The search warrant's generic descriptions of most of the targeted items provided marginal guidance to law enforcement about which items were properly subject to seizure. Both Detective Meyer and Chief Lynch implicitly admitted as much when they described their reliance on Regazzi's cooperation in order to conduct the search.
¶11. This search was preceded by a nine-month investigation of over twenty-five burglaries and thefts. The victims presumably provided specific descriptions of the missing items; it is doubtful that generic descriptions would suffice for a police investigation. The six-page, single-spaced affidavit supporting the search warrant demonstrates that law enforcement had more specific, detailed descriptions of many of the targeted items; that specificity, however, was not used in the warrant. Because of the availability of more specific descriptions of these items, the Fourth Amendment's particularity requirement was not satisfied. See Noll, 116 Wis. 2d at 451.

B. Inapplicability of exceptions to the exclusionary rule.
¶12. The trial court, although recognizing that some of the generic descriptions of the targeted items rendered the warrant partially defective, denied Regazzi's suppression motion on the severability, plain view and good faith exceptions to the exclusionary rule. However, we reject the applicability of these exceptions because Chief Lynch testified that he did not rely on the warrant when he entered the small room off the dining room to examine the JVC camcorder case, in which he found the marijuana.

1. The Severability Doctrine.
¶13. "[I]n cases involving search warrants which are partially but not wholly defective ... [it is proper to] admit[] those items seized pursuant to the valid parts of the warrant and suppress[] those items seized under the invalid portion." Id. at 454. This is known as the severability doctrine, which the State contends validates the seizure of marijuana, if we decide that some of the warrant descriptions did not satisfy the particularity requirement. The marijuana and the JVC camcorder were not mentioned in the warrant, and Chief Lynch testified that he did not rely on the warrant when he entered the small room off the dining room. Consequently, the severability doctrine is not applicable.

2. The Plain View Doctrine.
¶14. The plain view doctrine also provided a basis for the trial court's decision.
"[O]bjects falling within the plain view of an officer who has a right to be in the position to have the view are subject to valid seizure and may be introduced in evidence." A person has no reasonable expectation of privacy in an item that is in plain view. A seizure following a plain view is not the product of a search.
State v. Edgeberg, 188 Wis. 2d 339, 345, 524 N.W.2d 911 (Ct. App. 1994) (citations omitted). To apply the plain view doctrine:
(1) the evidence must be in plain view; (2) the officer must have a prior justification for being in the position from which [he or] she discovers the evidence in" plain view"; and (3) the evidence seized "in itself or in itself with facts known to the officer at the time of the seizure, [must provide] probable cause to believe there is a connection between the evidence and criminal activity."
State v. Guy, 172 Wis. 2d 86, 101-02, 492 N.W.2d 311 (1992) (citation omitted). The trial court concluded, "the officers were rightfully in the residence under the authority of the warrant."
¶15. A valid warrant authorizes a search for items in those areas of the specified premises, which are "plausible receptacles of the objects of the search." State v. Andrews, 201 Wis. 2d 383, 389, 549 N.W.2d 210 (1996). The warrant justified law enforcement's entry into Regazzi's home to search for the described items. As long as Chief Lynch was searching Regazzi's home pursuant to a warrant, any area searched in furtherance of the warrant was proper.
¶16. Contrary to the dissent's position however, Chief Lynch exceeded the scope of the warrant once he entered the small room off the dining room where he discovered the marijuana.[2] Chief Lynch testified that he went into the small room to examine the JVC camcorder case; he admitted that he was not searching for anything even arguably described in the warrant. Once he ventured into that room for a purpose he admitted was beyond the scope of the warrant, he lost any justification to be in a position to see the marijuana, which unlike the camcorder case, was not visible from the dining room. Without that lawful justification, the plain view doctrine does not apply. See Guy, 172 Wis. 2d at 101.

3. The Good Faith Doctrine.
¶17. The circuit court also denied suppression on the basis of the good faith exception to the exclusionary rule. See State v. Eason, 2001 WI 98, ¶3, 245 Wis. 2d 206, 629 N.W.2d 625. Wisconsin adopted the good faith exception if
the State has shown, objectively, that the police officers reasonably relied upon a warrant issued by an independent magistrate. The burden is upon the State to also show that the process used in obtaining the search warrant included a significant investigation and a review by either a police officer trained and knowledgeable in the requirements of probable cause and reasonable suspicion, or a knowledgeable government attorney.
Id. (addressing United States v. Leon, 468 U.S. 897 (1984)). In its order, the trial court described the testimony of Detective Meyer, Chief Lynch and the Assistant District Attorney who drafted the affidavit for the search warrant. It found their testimony credible. However, Chief Lynch admitted he had not relied on the warrant when he went over to "look[] at [the open JVC camcorder case]," and saw that it was filled with marijuana; thus, the good faith exception does not apply.
¶18. We therefore reverse the trial court's judgment and remand the cause with directions to reverse the order denying suppression of the marijuana, and for further proceedings consistent with this opinion.

By the Court.  Judgment reversed and cause remanded with directions.
¶19. SCHUDSON, J. (dissenting).
The issue is whether, under the plain view doctrine, the police lawfully seized the marijuana discovered during the course of the search.
¶20. Although the suppression motion testimony is confusing in some respects, a relatively simple and undisputed scenario emerges. Fox Lake Chief of Police Patrick Lynch, together with other officers, was in a Milwaukee residence executing a search warrant for stolen goods taken in numerous Dodge County burglaries. In the course of doing so, Chief Lynch came upon a camcorder bag in which he saw marijuana. The bag was open; the marijuana was in plain view.
¶21. Neither the particularity nor the scope of the search warrant has anything to do with the issue in this case. Under the authority of the search warrant, Chief Lynch had the right to be in the room of the residence where he saw the marijuana. The marijuana was in plain view. And the marijuana was evidence of criminal activity. Thus, the plain view doctrine was satisfied. See State v. Guy, 172 Wis. 2d 86, 101-02, 492 N.W.2d 311 (1992).
¶22. Hiking several paths leading away from the issue, the majority, distracted by the trees, has failed to see the forest. The issue, no less than the marijuana itself, is in plain view. The circuit court correctly denied Regazzi's suppression motion. Accordingly, I respectfully dissent.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Admittedly, had the facts developed differently, say, for instance, Chief Lynch entered the small room to look for stolen items listed in the search warrant when he discovered the marijuana, the dissent's analysis would be correct. However, this was not what occurred.